## In re INLAND WATERWAYS, Inc.
No. 6956.

District Court, D. Minnesota,
Fifth Division.
Feb. 28, 1947.

See also 49 F.Supp. 675.

Edward L. Fogarty, of Duluth Minn., trustee in bankruptcy of Inland Waterways, Inc.

Victor E. Anderson, U. S. Atty., and Carl R. Perkins, Sp. Atty., U. S. Treasury Department, both of St. Paul, Minn., for the United States.

Arthur M. Clure, of Duluth, Minn., for trustee in bankruptcy.

BELL, District Judge.

This is a bankruptcy proceeding. Federal tax liability of the bankrupt and the bankrupt estate is in controversy. The facts are not in dispute.

The bankrupt, a Minnesota corporation, was engaged in shipbuilding at Duluth, Minnesota, where it employed about two hundred persons. On December 19, 1942, it filed a petition under Chapter 10 of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., and a trustee was appointed. It soon was ascertained that operation of the business was not justified and the services of employees thereupon were terminated, the corporation was adjudged a bankrupt and the business liquidated. On March 13, 1943, the Court fixed the time within which claims could be filed. The Court in the hearing on claims allowed priority in the order and amounts as follows: 1. Wages due workmen and clerks not exceeding six hundred dollars each earned within three months prior to December 19, 1942, $44,168.89. 2. Taxes due and owing the United States $3,533.20. 3. Taxes due and owing to the State of Minnesota and county of St. Louis $4,557.62. There were no other debts having priority by law. Unsecured claims aggregated $168,941.62.

Where a corporate debtor is not reorganized but is ordered liquidated, Section 64 of the Bankruptcy Act, 11 U.S.C.A. § 104, specifying the classes of debts which are to have priority of payment over the general creditors of the bankrupt's estate and the order of their payment with respect to each other is applicable in determining priority of claims against the estate. In assigning the wage claims priority over taxes the Court in this case followed the plain mandate of the statute. United States v. Killoren, 8 Cir., 119 F.2d 364; In re Columbia Ribbon Company, 3 Cir., 117 F.2d 999.

The intention of Congress in giving labor claims priority over all others, save expenses of administration, is for the bene-

fit of those who are dependent on their wages for a livelihood and who are not expected to know the credit standing of their employer but must accept employment as it comes. In re Paradise Catering Corporation, D. C., 36 F.Supp. 974; In re Lawsam Electric Company, Inc., D. C., 300 F. 736; In re Estey, D. C., 6 F.Supp. 570; Blessing v. Blanchard, 9 Cir., 223 F. 35, Ann.Cas.1916B, 341.

The bankrupt, at the time of filing the petition, was engaged in the construction of ships for the United States Navy. The vessels under construction were at various stages of completion and were finished in other Navy Yards. However, it was ascertained that a balance was due the bankrupt on the uncompleted work which was compromised and settled for $14,505.38. The Bureau of Supplies and Accounts of the Navy Department transferred to the General Accounting Office the sum of $3,533.20 in payment of the government's claim for employment and withholding taxes for 1942 and the balance $10,972.18 was paid to the Trustee in Bankruptcy. The Trustee protested the deduction for and payment of the taxes and has not received the $3,533.20 or any part thereof. By this procedure the government offset its claim for taxes against the bankrupt's claim for services.

Section 68, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 108, sub. a, provides: "In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid." The purpose of this statute was stated in Cumberland Glass Manufacturing Co. v. DeWitt, 237 U.S. 447, 35 S.Ct. 636, 639, 59 L.Ed. 1042, in which the court said: "The object of this provision is to permit, as its terms declare, the statement of the account between the bankrupt and the creditor, with a view to the application of the doctrine of set-off between mutual debts and credits. The provision is permissive rather than mandatory, and does not enlarge the doctrine of set-off, and cannot be invoked in cases where the general principles of set-off would not justify it. * * * The matter is placed within the control of the bankruptcy court, which exercises its discretion in these cases upon the general principles of equity." Remington on Bankruptcy, 4th Edition, Volume 4, Section 1451 et seq. Since Gratiot v. United States, 15 Pet. 336, 40 U.S. 336, 10 L.Ed. 759, there has been no question of the right of the government to apply moneys due it to the extinguishment of its obligations on other accounts. The privilege of setoff results in a preference but it is based on well recognized rights of mutual debtors and has been incorporated into the Bankruptcy Act. Cumberland Glass Manufacturing Company v. DeWitt, supra. Clearly the offset of the government's claim for taxes against the sum it owed the bankrupt when this proceeding was commenced was authorized by law.

In April, 1945, the trustee received $10,972.18 from the Bureau of Supplies and Accounts of the United States Navy which was in payment of the sum due the bankrupt from the government exclusive of the sum offset for taxes assessed for 1942. On order of the court in June, 1945, a dividend of 25% was paid on labor claims earned prior to bankruptcy and having priority. These payments amounted to $10,530.38. The Collector thereupon claimed $209.33 for employment taxes and $1,887.48 for withholding taxes on the theory that the dividend on the labor claims was a payment of wages and therefore was subject to the taxes under the Internal Revenue Code.

When the petition in bankruptcy was filed on December 19, 1942, the rights and obligations of the bankrupt and its creditors in matters pertaining to the bankrupt estate became subject to the Bankruptcy Act. The estate consisted of certain property in the hands of the Trustee. It was in custodia legis and subject to the order of the court. It is true that the laborers when the petition was filed had a claim for wages but when allowed they became creditors of a bankrupt estate holding claims against the estate. A dividend was paid to them on their claims as ordered by the court and not as wages from an employer. The Trustee was not the "employer" of these laborers as defined in Section 1621(d) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 1621(d), nor

did the Trustee pay these men "wages" as defined in Section 1621(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 1621(a), as the laborers never rendered services to the Trustee. Taxes accruing during the administration of a bankruptcy proceeding is for the determination as to validity and amount by the bankruptcy court. In re Maryland Coal Company, D. C., 36 F.Supp. 142; In re California Pea Products Inc., D.C., 37 F.Supp. 658.

The offset was for $3,533.20, but in 1945 the government voluntarily abated $1,491.34 of the sum assessed for taxes for 1942, thus reducing the two claims for that year to a total of $2,041.86. The Collector then assessed a tax of $2,096.81 on the dividend paid to the laborers in 1945 and applied the $1,491.34, the sum abated, to the payment thereof. The Collector claims a balance due of $900.44.

I conclude (1) that the taxes of $2,041.86 assessed for 1942 were valid and that an offset for that sum was proper; (2) that $1,491.34 of the offset was improper and should be paid to the Trustee in Bankruptcy with interest according to law; and (3) that the assessment of the tax on the dividend paid to laborers in 1945 was invalid.