In re IML FREIGHT, INC., a Utah Corporation, Debtor.

In re INTERSTATE RENTAL OF UTAH, INC., a Utah Corporation, Debtor.

In re IML PROPERTIES, INC., a Utah Corporation, Debtor.

TRADEX, INC., Plaintiff,

v.

The UNITED STATES of America, Defendant.

Bankruptcy Nos. 83C–01950 to 83C–01952.
Civ. No. 83PC–3254.

United States Bankruptcy Court,
D. Utah.

Aug. 22, 1986.

See also, Bkrtcy., 52 B.R. 124.

Peter W. Billings, Jr. and Douglas L. Furth, Fabian & Clendenin, Salt Lake City, Utah, for Robert K. Morrow, Inc., Chapter 7 Trustee for Tradex, Inc. and Agent and Attorney-in-Fact for the Trustee of IML Freight, Inc., Interstate Rental of Utah, Inc., and IML Properties, Inc.

Robert D. Merrill, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, for Main Hurdman, Trustee for IML Freight, Inc., Interstate Rental of Utah, Inc., and IML Properties, Inc.

Brent D. Ward and Barbara Richman, U.S. Attys., Salt Lake City, Utah, and Glen R. Dawson, Tax Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

GLEN E. CLARK, Bankruptcy Judge.

## CASE SUMMARY

In this case the Court is called upon to determine whether or not, under the facts set out below, the United States may set off a $103,404.58 tax penalty against its prepetition obligation to the debtor. For the reasons set forth herein this Court concludes that setoff is proper.

## PRELIMINARY FACTS AND PROCE- DURAL BACKGROUND

On December 23, 1983, Tradex, Inc. ("Tradex") commenced this civil proceeding against the United States seeking, on behalf of Tradex and IML Freight, Inc., Interstate Rental of Utah, Inc., and IML Properties, Inc. (collectively "IML"), the turnover of certain monies which it alleged the United States owed to IML for shipping services rendered pursuant to certain government bills of lading. The United States answered by denying liability and counterclaiming for setoffs pursuant to 11 U.S.C. § 553.

Tradex, IML, and the United States have compared their records and agree that:

1. IML submitted to the United States valid government bills of lading in the sum of $612,451.43;

2. The United States Department of the Army has loss and damage claims against IML of $10,846.59;

3. The United States Department of the Navy has damage claims against IML of $24,455.70;

4. The United States has claims for overpayment and overcharges on prepetition accounts receivable of $261,600.00;

5. The United States Treasury Department, Customer Service, has claims for customs fines of $4,837.00;

6. The United States Internal Revenue Service has an undisputed claim against IML in the amount of $55,807.07 for tax and interest and a disputed claim

against IML for $103,404.58 for tax penalties.

On July 23, 1984, the parties entered into a stipulation which was intended to compromise and settle this civil proceeding. By virtue of this stipulation, all issues were resolved with the exception of the tax penalty question. On July 31 this Court entered an order approving the stipulation as modified. On October 10, 1984, the parties filed a second stipulation with the Court in which the parties agreed that the remaining dispute, regarding tax penalties in the amount of $103,404.58, would be treated as a summary judgment motion.

## UNDISPUTED FACTS

The following facts are undisputed by the parties:

On January 31, 1983, IML filed an employer's quarterly federal tax return for the fourth quarter of 1982. The last deposit for that period was made by IML by check on January 5, 1983, in the amount of $527,374.28. This check was returned to IML on January 7, 1983, for insufficient funds. On January 25, 1983, IML forwarded a second check to the Internal Revenue Service ("IRS"), which was honored. On March 28, 1983, the IRS assessed a tax penalty against IML in the amount of $26,601.10 as a result of the January 5 check.

On April 29, 1983, IML filed an employer's quarterly tax return for the first quarter of 1983. During that quarter on March 2, IML deposited with the IRS a check in the amount of $398,883.75, which was returned for insufficient funds. On July 14 and July 15, IML wrote checks in the amounts of $195,000.00, $93,601.48, and $110,263.27 to the IRS in order to make good on the March 2 check. On July 4,

1983, the IRS assessed tax penalties against IML in the total amount of $49,860.04 as a result of the March 2 check, including a late deposit penalty of $39,088.14, a returned check penalty of $3,988.83 and a failure to pay penalty of $5,983.07.

On July 4, 1983, IML filed an employer's quarterly tax return for the second quarter of 1983. During that quarter on June 8 IML deposited with the IRS a check in the amount of $173,870.25. That check was returned for insufficient funds. On July 15, IML wrote checks in the amount of $37,429.28 and $136,440.97 to cover the amount owed to the IRS as a result of the June 8 check.

The IRS has filed a proof of claim and asserts a setoff in the amount of $26,732.32 as a result of the return of the June 8 check. On July 14, 1983, IML wrote a check to the IRS for $42,225.00 for federal highway use tax, which was not honored. The United States filed a proof of claim for a tax penalty of $211.12 as a result of the dishonoring of the July 24 check.[1]

## DISCUSSION

The United States claims the right to setoff tax penalties totaling $103,404.58 against sums owed by the United States to IML. The tax penalties at issue consist of "failure to deposit" penalties imposed under 26 U.S.C. § 6656[2] for untimely deposit of taxes due for the fourth quarter of 1982 and the first two quarters of 1983 in the respective amounts of $26,601.10, $39,888.14, and $26,732.32. The penalties also include a "failure to pay" penalty of $5,983.07 imposed under 26 U.S.C. § 6651[3] for the untimely payment

1. IML and Tradex agree that $42,225.00 is presently due and owing to the IRS for federal highway use tax, and further stipulated that that amount may be setoff against the United States' obligation to IML.

2. Section 6656(a) imposes a penalty, without a reasonable cause, for failure to make a deposit of taxes. To defeat the penalties under this statute there must be a showing that the taxpayer's default was due to reasonable cause and not

due to willful neglect. *Marvel v. United States,* 719 F.2d 1507, 1516 (10th Cir.1983).

3. Section 6651(a) provides a uniform general rule as to the additions to tax for failure to file a tax return. Under this rule, a taxpayer may avoid the addition to the tax for delinquent filing by showing that the delinquency was due to reasonable cause. H.R.Rep. No. 1337, 83d Cong., 2d Sess. (1954), *reprinted in* 1954 U.S. Code Cong. & Admin.News, pp. 4017, 4566;

of taxes due for the first quarter of 1982, as well as a "returned check" penalty of $3,988.83 imposed pursuant to 26 U.S.C. § 6657 [4] for the first quarter of 1982.[5]

 Setoff is the right that exists between two parties to net their respective debts where each party, as a result of unrelated transactions, owes the other an ascertained amount. In any action brought for the larger debt, only the balance would be recoverable. Comment, *Setoff in Bankruptcy: Is the Creditor Preferred or Secured?*, 50 U.Colo.L.Rev. 511 (1979). Although the principle of setoff is not complicated, its application in the bankruptcy context has been the source of much litigation. Section 553 provides that bankruptcy "does not affect the right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case ... against a claim of such creditor against the debtor that arose before the commencement of the case...." Section 553 essentially preserves, with some changes, the right of setoff in bankruptcy cases found in former Section 68 of the Bankruptcy Act. Generally speaking, a creditor may setoff a mutual debt owed by the creditor to the debtor against a claim by the creditor against the debtor, where the claim and the debt both arose before the commencement of the case. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 377 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News, pp. 5787, 6333. The statute contains several exceptions and limitations. First, the debt to be setoff must be allowable. 11 U.S.C. § 553(a)(1). *See also* 11 U.S.C. § 502. Second, the claim to be

setoff may not have been transferred to the creditor after 90 days before filing while the debtor was insolvent. 11 U.S.C. § 553(a)(2)(B). Third, the claim may not be one incurred during the 90–day period before filing while the debtor was insolvent for the purpose of obtaining a right of setoff. 11 U.S.C. § 553(a)(3)(A)–(C). *See generally* P. Murphy, CREDITORS' RIGHTS IN BANKRUPTCY § 14.12, at 14–14 (1985); 4 COLLIER ON BANKRUPTCY ¶ 553.01[4], at 553–6 to 553–8 (15th ed. 1986); W. Norton, NORTON BANKRUPTCY LAW AND PRACTICE § 33.01, at Pt. 33–p. 3 (1981); B. Weintraub & A. Resnick, BANKRUPTCY LAW MANUAL ¶ 5.10, at 5–32 to 5–36 (1980); Ahart, *Bank Setoff Under the Bankruptcy Reform Act of 1978*, 53 Am.Bankr.L.J. 205, 216–23 (1979). Fourth, the right of setoff is not an unrestricted right; a right of setoff, even if valid, is stayed pursuant to Section 362(a)(7) by the filing of the petition. *See United States v. Norton*, 717 F.2d 767, 772–73 (3d Cir.1983). Finally, the trustee has the right under Section 363 to use property that is subject to a right of setoff provided adequate protection is given. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 185, 377 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News, pp. 6146, 6333.

Although proceedings in bankruptcy are equitable in nature, with equality among creditors a dominant theme, a setoff has the effect of paying one creditor more than the rest. *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1165 (2d Cir.1979). Setoff, in effect, elevates an unsecured claim to

S.Rep. No. 1622, 83d Cong., 2d Sess. (1954), *reprinted in* 1954 U.S.Code Cong. & Admin. News, p. 5240. Penalties for failure to file returns are mandatory unless failure is due to reasonable cause and not due to willful neglect. *Ferrando v. United States*, 245 F.2d 582, 587 (9th Cir.1957); *Sanders v. Commissioner*, 225 F.2d 629, 636–37 (10th Cir.1955), *cert. denied* 350 U.S. 967, 76 S.Ct. 435, 100 L.Ed. 839 (1956).

**4.** Section 6657 provides a specific penalty for giving the IRS a bad check in payment of any tax liability. The penalty does not apply if the

taxpayer tendered the check in good faith and with reasonable cause to believe that it would be paid upon presentment. *See* House Report, *supra* note 3, at 4567; Senate Report, *supra* note 3, at 5244.

**5.** By agreement of the parties, the factual issues regarding the debtor's possible defenses to these tax penalties shall not be considered and the Court's ruling will be limited to whether or not the United States may setoff prepetition tax penalties against prepetition shipping charges.

792

secured status. *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir.1985). *See Setoff in Bankruptcy, supra,* at 526. There can be no serious doubt that a right of setoff in effect works a preference, by allowing one unsecured creditor to receive the full measure of what is owed to him. 3 REMINGTON ON BANKRUPTCY § 1434.5, at 376–77 (J. Henderson rev. 1957). However, the justification for permitting setoff is based on notions of fairness:

> The rationale for permitting any right to setoff within bankruptcy has been a matter of some concern. In part, that rationale is grounded on concepts of fairness. In the absence of a recognition of the right to a setoff, the creditor might be forced to pay in full the amount owed to the debtor, but be limited to no more than a pro rata recovery of his claim against the debtor. The process of imposing this loss on an otherwise innocent party has historically been thought to be improper. In part, the recognition of setoff in bankruptcy has been a result of viewing a setoff claim as a form of security interest recognized under state law.

NORTON BANKRUPTCY LAW AND PRACTICE, *supra* § 33.01, at Pt. 33, pp. 1–2. *See also United States v. Brunner,* 282 F.2d 535, 537 (10th Cir.1960); *Browner v. Rosen,* 56 B.R. 214, 217 (D.Mass.1985).

■ The right of setoff under Section 553 is neither automatic nor self-executing, nor is setoff mandatory. Its application, when properly invoked, rests in the discretion of the Court. COLLIER ON BANKRUPTCY, *supra* ¶ 553.02, at 553–10 to 553–11. Generally, however, there is a judicial presumption favoring allowance of setoff. "The statutory remedy of setoff should be enforced unless the court finds after due reflection that allowance would not be consistent with the provisions and purposes of the Bankruptcy Act as a whole." *Bohack Corp. v. Borden, Inc.,* 599 F.2d at 1165. The legislative history of Section 553 indicates that the court's discretion to deny setoff is most appropriately exercised in Chapter 11 cases:

> In a liquidation case, any setoff that occurs after the commencement of the case has no effect on the debtor. The amount that the creditor recovers through setoff will permit him to recover a higher percentage of his total claim than other creditors, but it will not interfere with the debtor's operation or business in any way, because the debtor has already gone out of business. Whether the setoff is of a bank deposit or of mutual debts and credits with another merchant or business, the effect is the same.

> The situation for the treatment of setoff in a reorganization case is very different than in a liquidation case. In order to accomplish a successful reorganization, it is important that business proceed as usual for the debtor. Setoff is an interruption in the conduct of business, and may have detrimental effects on the attempted reorganization. A district court ruling on a setoff matter in the [In re] *Penn Central* [Transportation Co., 315 F.Supp. 1281 (E.D.Pa.1970)] case found it

>> ... inconceiveable [sic] that Congress intended that a railroad under section 77 reorganization should be deprived of the use of its cash, by the very act of the filing the reorganization petition. If the respondent banks are correct in their contention that this court's Order No. 1 was invalid, no railroad could possibly reorganize under section 77.

> The case cited was a section 77 railroad case, and is distinguishable on that important ground, because the public interest in maintaining operation of a railroad is overriding. However, the point of the quoted phrase is that setoff in the reorganization context makes reorganization more difficult, because it deprives the debtor of the use of its cash on deposit with banks.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 183–84 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News, p. 6144–45 (footnote omitted). *See Lowden v. Northwestern National Bank,* 298 U.S. 160, 164–65, 56 S.Ct. 696, 698–99, 80 L.Ed. 1114 (1936). *See generally* Morton, *Creditor Setoffs in Business Reorganization and Relief Cases Under the Bankruptcy Act,* 50 Am. Bankr.L.J. 373–387 (1976).

▮▮▮ In order to establish a right of setoff under Section 553, a creditor must establish each of the following elements: (1) a debt owed by the creditor to the debtor which arose prior to the commencement of the bankruptcy case; (2) a claim of the creditor against the debtor which arose prior to the commencement of the bankruptcy case; and (3) the debt and the claim must be mutual obligations. *In re Republic Financial Corp.,* 47 B.R. 766, 768 (Bkrtcy.N.D.Okla.1985). The critical determination in this and most reported setoff cases is whether or not the parties' debts are "mutual." The term "mutual debt" is not defined in the Bankruptcy Code, but has been interpreted by courts to require that the debts be in the same right and between the same parties, standing in the same capacity. *See* COLLIER ON BANKRUPTCY, *supra* ¶ 553.04[2], at 553–18; REMINGTON ON BANKRUPTCY, *supra* § 1445, at 399. The basic test of mutuality is not similarity of obligation but whether or not something is owed by each side. 4 COLLIER ON BANKRUPTCY ¶ 68.04[2], at 862–63 (14th ed. 1978). The creditor's debt must be owed to the estate of the debtor and the estate's debt must be owed to the creditor. *See id.* at 868. There is no requirement that the debt and the claim arise from the same transaction. *See Inter-State National Bank of Kansas City v. Luther,* 221 F.2d 382 (10th Cir.1955); *In re Midwest Service and Supply Co., Inc.,* 44 B.R. 262, 265–66 (D. Utah 1983); *Matter of Romano,* 52 B.R. 586, 589 (Bkrtcy.M.D. Fla.1985). In fact, the mutual debt and claim contemplated by Section 553(a) "are generally those arising from *different*

transactions." 4 COLLIER ON BANKRUPTCY ¶ 553.03, at 553–12 (15th ed. 1986).

In *In re Inland Waterways,* 71 F.Supp. 134 (D.Minn.1947), the debtor, a shipbuilder, was engaged in the construction of ships for the United States Navy at the time it filed a petition under Chapter X of the former Bankruptcy Act. The debtor had vessels under construction which were at various stages of completion when it terminated operation of its business and was adjudged a bankrupt. When it was determined that the debtor was owed $14,-505.38 on the uncompleted work which had to be finished by other shipbuilders, the Navy Department setoff $3,533.20, for prepetition employment and withholding taxes, and paid the trustee the balance. The trustee objected to this offset of the government's claim for taxes against the debtor's claim for services. The Court concluded that the setoff was proper.

> Since *Gratiot v. United States,* 15 Pet. 336, 40 U.S. 336, 10 L.Ed. 759, there has been no question of the right of the government to apply moneys due it to the extinguishment of its obligations on other accounts. The privilege of setoff results in a preference but it is based on well recognized rights of mutual debtors and has been incorporated into the Bankruptcy Act. Clearly the offset of the government's claim for taxes against the sum it owed the bankrupt when this proceeding was commenced was authorized by law.

71 F.Supp. at 136 (citation omitted).

The court in *In re Sound Emporium, Inc.,* 48 B.R. 1 (Bkrtcy.W.D. Texas 1984), reached the same result under the Bankruptcy Code. In that case, the United States Army owed the debtor $4,890.20 on the date of filing for two computer printers delivered to Fort Hood Army Base. The debtor owed the IRS prepetition withholding, FICA, and FUTA taxes. The IRS sought to setoff the Army debt against the federal tax claim. The court granted relief

from the automatic stay to permit setoff, noting

> Under Section 553 it is not mandatory that the debt and claim be of an identical character. The only requirement is that the debt and claim be mutual—that something is owed by both sides. *See, Ivanhoe Bldg. & Loan Association v. Orr*, 295 U.S. 243, 55 S.Ct. 685, 79 L.Ed. 1419 (1935). In the case at bar there are mutual obligations between the United States and the debtor.

48 B.R. at 3.

■ In the present case it is clear that the obligations for tax penalties owed by the debtor to the United States did not arise out of the same transaction as the claims by the debtor for shipping charges. Nevertheless, it is this Court's view that there is a mutuality of obligation. Each party owes a debt, and each party owes it directly to the other. It follows that the United States is entitled as a matter of law to setoff the tax penalties against shipping charges owed to the debtor.

The United States Attorney shall prepare and submit an appropriate order consistent with the foregoing and in accordance with Local Rule 13.