In re Nathan DAVIDOVICH and Amy Jill Davidovich, Debtors.

Nathan DAVIDOVICH and Christine Jobin, Trustee, Plaintiffs–Appellants,

v.

Charles WELTON, Defendant–Appellee.

No. 89–1035.

United States Court of Appeals, Tenth Circuit.

May 2, 1990.

---

Nathan Davidovich of Nathan Davidovich & Associates, P.C., Denver, Colo., for plaintiffs-appellants.

Robert R. Marshall, Jr. (Jeffrey L. Dykes with him, on the brief), Elrod, Katz, Preeo & Look, P.C., Denver, Colo., for defendant-appellee.

Before BRORBY and EBEL, Circuit Judges, and JOHNSON,* District Judge.

PER CURIAM.

In this action, brought by the debtor and bankruptcy trustee against the debtor's former law partner, plaintiffs seek confirmation of an arbitration award resolving disputes arising out of dissolution of the law partnership and a judgment awarding plaintiffs the proceeds from this award. The bankruptcy court dismissed their petition upon finding that any amount due plaintiffs under the arbitration proceeding was entirely offset by mutual debts determined in this same proceeding and by costs incurred by the defendant in connection with a real estate partnership between the former law partners and others. Plaintiffs appeal this ruling and other aspects of the bankruptcy court judgment. We affirm in part and reverse in part.

## Background

The following facts are undisputed unless otherwise noted:

On January 1, 1980, debtor-appellant Nathan Davidovich and defendant-appellee Charles Welton formed a partnership to engage in the general practice of law. Just less than three years later, the two joined with four others to form the OSM Partnership. This Partnership owned and managed a small commercial building which housed the Davidovich & Welton law firm and several other tenants. Under the OSM Partnership Agreement, Davidovich and Welton each owned a 30% share of this partnership and were its managing partners. Both parties, as well as the other OSM partners, were also jointly and severally liable on an OSM Partnership note totaling approximately $460,000.

*Dissolution of the law partnership.* On September 1, 1984, Davidovich and Welton dissolved their law partnership. In April of the following year, they agreed to bind-

* Honorable Alan B. Johnson, District Judge, United States District Court for the District of Wyoming, sitting by designation.

ing arbitration of all disputes attendant to the dissolution of the partnership before the Denver Bar Association Intraprofessional Committee (Committee). Although Welton requested that the Committee also address issues relating to the OSM Partnership in this proceeding, the Committee declined on the grounds that resolution of these issues would be binding on non-parties to the arbitration, namely the other OSM partners and the OSM Partnership itself.

In its October 29, 1986 decision, as supplemented on February 27, 1987 (collectively the "Arbitration Award"), the Committee, among other things, found that the parties had agreed that the attorneys' fees generated by cases pending at the time of the law firm dissolution should be distributed between them according to the following formula: The attorney retaining the case received 50% of any fee generated after the partnership's dissolution; the attorney responsible for bringing the case into the partnership would receive 25% of any fees and Davidovich and Welton would split the remaining 25% of any fees generated. The Committee further found that the parties' agreement applied to all pending personal injury cases which were listed in the parties' respective position papers. Upon noting that the parties disagreed on application of the distribution formula to one case, the Trujillo matter, the Committee resolved the dispute by finding that the case was referred to the partnership jointly, thus requiring Davidovich and Welton to split the 25% "fee generating" share. The Committee did not find that the parties disputed application of the fee formula to any other cases identified in their position papers.

In its initial 1986 decision, the Committee calculated that Welton owed Davidovich $38,583.29 for cases resolved since the firm's dissolution and for other partnership expenses and that Davidovich owed Welton $25,515.02 on the same basis. The net result of these calculations, therefore, was a debt of $13,068.27 owed by Welton to Davidovich. This net result was subject to readjustment, however, for fees collected in former partnership cases resolved after the Committee's initial decision and certain other matters addressed in the Arbitration Award. According to a July 1988 accounting prepared by Welton, these adjustments resulted in a net debt of $15,256.84 owed by Welton to Davidovich. Defendant's Ex. 1. This total was subject to further adjustment upon resolution of four remaining partnership cases, one retained by Davidovich and three by Welton. *Id.* At the time of this appeal, one of these cases, the McCafferty case retained by Welton, was awaiting appeal of an $800,000 jury verdict awarded to Welton's client. According to Welton's submittal to the Committee, which was not disputed by Davidovich in the arbitration proceeding, Davidovich is entitled to receive 12.5% of any fee ultimately collected in this case.

*Bankruptcy of Davidovich.* On August 14, 1985, while the Committee arbitration was still underway, Davidovich filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Soon thereafter, plaintiff-appellant Christine Jobin was appointed trustee of the bankruptcy estate. On January 29, 1986, the court granted Davidovich a discharge of all debts arising before that date. Welton did not file a proof of claim against Davidovich's estate in this proceeding. The Bankruptcy Court approved a stipulation for relief from stay to allow the arbitration proceeding to continue.

*OSM Partnership events.* Shortly before Davidovich declared bankruptcy, the OSM Partnership fell behind in payments on its bank loans and consequently issued a partnership call for a total of $10,000. Defendant's Ex. 85. Davidovich did not pay his 30% share of this call, which came due two weeks after he filed for bankruptcy. In case of such a partner default, the OSM Partnership Agreement permitted the nondefaulting partners to (1) ignore Davidovich's default or (2) to pay his share themselves and then either require him to execute a promissory note payable to the parties who advanced his share or to essentially cede his partnership share to those parties. Defendant's Ex. 2, ¶ 3.05. Some or all of the nondefaulting OSM partners, including Welton, apparently opted to pay

Davidovich's share and then distribute his partnership share among themselves.

Sometime after the partnership call and Davidovich's bankruptcy filing, the bank foreclosed on the deed of trust securing the OSM Partnership note. As a result of the negotiations and litigation that followed, Welton claims to have contributed an additional $52,000 to the OSM Partnership to help redeem the commercial building owned by the Partnership and settle the deficiency remaining on Partnership's original note. Doc. 7 at 4.

*This proceeding.* On November 18, 1987, Davidovich and the trustee for the bankruptcy estate filed this adversary proceeding against Welton, seeking confirmation of the Arbitration Award, an accounting under the Award, discharge of the amount Davidovich was required to pay Welton under the Award and a judgment on the Award. Doc. 1. In their complaint, plaintiffs alleged that the proceeds from the Arbitration Award were necessary to satisfy the remaining debts of the bankruptcy estate, with any remainder to be paid to Davidovich. Sometime after initiating this action, plaintiffs also requested that the court determine that Davidovich was entitled to 25% of any fees generated by the McCafferty case, rather than the 12.5% stated in papers submitted to the Committee in the arbitration proceeding.

Welton argued before the bankruptcy court that the Arbitration Award was binding on the parties and (1) limited Davidovich to recovery of 12.5% of whatever fees were collected in the McCafferty case and (2) mandated an offset for the more than $25,000 Davidovich owed Welton under that Award. Welton also argued that any net debt owed to Davidovich pursuant to the Award was more than offset by the $52,000 Welton had contributed to the OSM Partnership after Davidovich's bankruptcy to redeem the OSM property and prevent a deficiency judgment from being entered against himself and the other parties, including Davidovich, on the OSM Partnership note. In support of both requested offsets, Welton cited both the setoff provisions of 11 U.S.C. § 553 (1982 & Supp. III

1985) and the equitable doctrine of recoupment.

The Bankruptcy Court accepted each of Welton's arguments and dismissed this action pursuant to Welton's motion at the close of plaintiffs' case. On appeal to the U.S. District Court for the District of Colorado, the bankruptcy court's judgment was affirmed in its entirety. This appeal timely followed.

### Discussion

We review the decision of the bankruptcy court under the same standards of review that govern appellate review in other cases. *See Bartmann v. Maverick Tube Corp.,* 853 F.2d 1540, 1543 (10th Cir.1988). Accordingly, we review the bankruptcy court's legal determinations *de novo, Heins v. Ruti–Sweetwater, Inc. (In re Ruti–Sweetwater, Inc.),* 836 F.2d 1263, 1266 (10th Cir.1988), and its factual findings under the clearly erroneous standard. Fed.R. Civ.P. 52(a). A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made. *LeMaire v. United States,* 826 F.2d 949, 953 (10th Cir.1987).

Plaintiffs raise three primary issues on appeal: (1) whether the bankruptcy court erred in holding that Welton's debt to Davidovich under the Arbitration Award was entirely offset by obligations arising out of the Arbitration Award and the OSM Partnership; (2) whether the bankruptcy court erred in holding that the Arbitration Award limited Davidovich's share of the fee in the McCafferty case to 12.5% and (3) whether the bankruptcy court erred in dismissing this action without confirming the Arbitration Award. We address each issue in turn.

### A. Setoff and Recoupment

The bankruptcy court denied plaintiffs any recovery under the Arbitration Award on the ground that Davidovich's debts to Welton under both that Award and the OSM Partnership completely offset whatever amount Davidovich might otherwise

be due under the Award. The legal bases for this holding were the related but distinct doctrines of setoff and recoupment.

### 1. *General principles*

■ The common law doctrine of setoff, as recognized in section 553 of the Bankruptcy Code, grants a creditor the right "to offset a mutual debt owing by such creditor to the debtor" so long as both debts arose before commencement of the bankruptcy action and are indeed mutual. 11 U.S.C. § 553(a); *see Tradex, Inc. v. United States (In re IML Freight, Inc.)*, 65 B.R. 788, 791 (Bankr.D.Utah 1986). This mutuality requirement mandates that the debts involved be between the same parties standing in the same capacity, *see England v. Industrial Comm'n (In re Visiting Home Servs., Inc.)*, 643 F.2d 1356, 1360 (9th Cir.1981) (interpreting a predecessor to § 553); *In re O.P.M. Leasing Servs., Inc.*, 68 B.R. 979, 986 (Bankr.S.D.N.Y.1987) (interpreting § 553), and that each debt be valid and enforceable. *See Borkman v. U.S. Pipe & Foundry Co. (In re Borkman)*, 17 B.R. 710, 712 (Bankr.E.D.Tenn. 1982) (quoting 4 *Collier on Bankruptcy* § 553.04[2] (L. King 15th ed. 1979)). The mutual debt need not, however, have arisen out of the same transaction in order for setoff to be available under the statute. *See id.; IML Freight, Inc.*, 65 B.R. at 793.

■ The common law doctrine of recoupment, while frequently merged with the doctrine of setoff in other contexts, is a distinct doctrine in bankruptcy cases. *See Ashland Petroleum Co. v. Appel (In re B & L Oil Co.)*, 782 F.2d 155, 157 (10th Cir. 1986). This distinction arises from recoupment's origin as an equitable rule of joinder that permitted adjudication in one suit of two claims, both arising out of the same transaction, that otherwise had to be brought separately under the common law forms of actions. *Id.* In the modern bankruptcy setting, this rule has evolved to permit a creditor to offset a claim that " 'arises from the same transaction as the

debtor's claim,' " without reliance on the setoff provisions and limitations of section 553, because the creditor's claim in this circumstance is " 'essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable.' " *Id.* (quoting *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir.1984)). Thus, so long as the creditor's claim arises out of the "same transaction" as defined under the recoupment doctrine, the creditor's claim may be offset against the debt owed without regard for the timing and other requirements stated in section 553 of the Bankruptcy Code.

### 2. *Application to this case*

In this case, the bankruptcy court did not distinguish between setoff and recoupment in allowing Welton to offset his Arbitration Award and OSM Partnership claims against Davidovich. Accordingly, we must test each claimed offset against both doctrines to determine their validity.

■ *Arbitration Award offset.* It is clear from the discussion above that Welton's claim against Davidovich pursuant to the Arbitration Award may be offset against his debt to Davidovich under that same Award under either the setoff provisions of section 553 or the doctrine of recoupment. Setoff under section 553 is permitted because both claims arose before Davidovich filed for bankruptcy, are between the same parties acting in the same capacity and are otherwise valid and enforceable.[1] *See* 11 U.S.C. § 553(a); *see generally* 4 *Collier on Bankruptcy* at § 553.04[2] (L. King 15th ed. 1990). An offset is similarly available under the doctrine of recoupment because both debts arise out of a single integrated transaction, the binding arbitration proceeding before the Committee, such that it would be inequitable for Davidovich to enjoy the benefits of that transaction without meeting its obligations. *See In re B & L Oil Co.*, 782 F.2d at 157. Accordingly, we affirm the bank-

---

1. See discussion below regarding Davidovich's claim that the bankruptcy court's discharge of his debts, coupled with Welton's failure to file a proof of claim against the bankruptcy estate, barred any offset from being asserted by Welton.

ruptcy court's holding that Welton is entitled to offset Davidovich's debt under the Arbitration Award against Welton's obligations to plaintiffs under that same Award.

■ *OSM Partnership offset.* We have considerably more difficulty with the bankruptcy court's approval of an offset for costs incurred by Welton in connection with the OSM Partnership. At the outset, we note that Welton does not actually claim a debt against Davidovich in this regard, but rather reimbursement for contributions to the Partnership that may have prevented a deficiency judgment from being entered against Davidovich and the estate. There is no evidence in the record, however, that any part of these contributions were made on behalf of Davidovich or that Davidovich otherwise owes Welton and the other OSM partners some amount in connection with settlement of the deficiency action. In fact, it appears that, pursuant to the OSM Partnership Agreement, Welton and the remaining OSM partners essentially took over Davidovich's OSM Partnership share after he failed to respond to the August 1985 partnership call, leaving Davidovich with no participation in or potential future benefit from the Partnership's subsequently successful efforts to redeem the OSM property from foreclosure and to settle the deficiency action. Assuming that a claim could be made against Davidovich in these circumstances, it would also appear that the Partnership itself, rather than Welton individually, owns that claim. Finally, if any claim does exist against Davidovich in connection with the OSM Partnership, it arose after Davidovich filed for Chapter 7 bankruptcy.

This last factor alone precludes any right to setoff a claim based on these events against the prepetition claim that ultimately resulted in the Arbitration Award. *See* 11 U.S.C. § 553(a). Given the relationship between Welton's debt under the Arbitration Award and his additional contributions to the OSM Partnership, we must also hold

that Welton cannot offset these contributions under the doctrine of recoupment. "The fact that the same two parties are involved [in the claims to be offset], and that a similar subject matter gave rise to both claims ... does not mean that the two arose from the 'same transaction'" for purposes of the doctrine of recoupment. *Lee v. Schweiker,* 739 F.2d 870, 875 (3d Cir. 1984). In fact, courts have generally only found this "same transaction" requirement to be satisfied when the debts to be offset arise out of a single, integrated contract or similar transaction. *See In re B & L Oil Co.,* 782 F.2d at 157–58; *Quittner v. Los Angeles Steel Casting Co.,* 202 F.2d 814, 816 (9th Cir.1953). In this case, Welton's obligations under the Arbitration Award and his additional contributions to the OSM Partnership not only did not arise out of a single contract, they are not limited to the same parties (because of the involvement of the OSM Partnership and other partners in the latter transaction) and only arose out of the same subject matter to the extent that the concept of the OSM Partnership arose out of Davidovich and Welton's association in their former law firm.[2] This single connection is simply not enough to establish that any claim Welton may have against Davidovich in connection with the OSM Partnership arises out of the "same transaction" as Welton's obligations under the Arbitration Award such that it may be asserted as a *de facto* defense to those obligations under the doctrine of recoupment. Accordingly, we reverse both the bankruptcy court's determination that the two claims were part of the "same transaction" for purposes of recoupment and its holding that Welton's OSM Partnership contributions could be offset against his obligations under the Arbitration Award.

### 3. *Discharge and/or lack of proof of claim as bar to any offset*

■ Davidovich also challenges the award of any offset in this case on the grounds that Welton's failure to file a proof of claim against the bankrupt estate,

---

**2.** Plaintiffs admitted the tenuous connection between the Arbitration Award and OSM Partnership matters when they stated in their trial brief

to the bankruptcy court that their claims arising out of the OSM Partnership were "unrelated to the arbitration." Doc. 7 at 5.

coupled with the bankruptcy court's entry of an order discharging Davidovich from his debts, preclude Welton from asserting any right to setoff or recoupment in this proceeding. Davidovich's cited basis for this argument is our decision in *Turner v. United States (In re G.S. Omni Corp.),* 835 F.2d 1317 (10th Cir.1987).

In *In re G.S. Omni,* we held that timely filing of a proof of claim is not a prerequisite to asserting a right of setoff under 11 U.S.C. § 553. *Id.* at 1317. In so doing, we reasoned that a creditor's right to setoff was a universally recognized right grounded in principles of fairness that was not, with a few limited exceptions, affected by the Bankruptcy Code. *Id.* at 1318. As further support for our holding, we noted that a debt remains viable at least until discharged and hence stated that "until discharge is ordered, a creditor need not file a proof of claim as a prerequisite to asserting a right of setoff pursuant to § 553." *Id.* at 1319.

Davidovich has seized on this latter statement to argue that filing of a proof of claim is a prerequisite to asserting a right of setoff pursuant to section 553 in any post-discharge action brought to recover money owed the estate or debtor. This result is not required by *Omni,* however, and contradicts express provisions of the Bankruptcy Code. As we recognized in *Omni,* the Bankruptcy Code "does not affect any right of a creditor to offset a mutual, [prepetition] debt owing such creditor" other than in a limited number of circumstances not present here. *Id.* at 1318; 11 U.S.C. § 553(a). Thus, the right to assert a setoff against a mutual, prepetition debt owed the bankrupt estate survives even the Bankruptcy Court's discharge of the bankrupt's debts. *In re Morgan,* 77 B.R. 81, 85 (Bankr.S.D.Miss.1987); *Ford v. Darracott (In re Ford),* 35 B.R. 277, 279–80 (Bankr.N.D.Ga.1983); *Slaw Constr. Corp. v. Hughes Foulkrod Constr. Co. (In re Slaw Constr. Corp.),* 17 B.R. 744, 748 (Bankr.E.D.Pa.1982);[3] *see Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.),* 110 Bankr. 20, 26 (Bankr.D.Colo. 1990). Here, no less than in *Omni,* it would also "be unfair to deny a creditor the right to recover an established obligation while requiring the creditor to fully satisfy a debt to a debtor." *Omni,* 835 F.2d at 1318. Accordingly, we reaffirm our holding in *Omni* that filing of a proof of claim is not a prerequisite to assertion of a right to setoff under 11 U.S.C. § 553 and hold further that a discharged debt may be setoff upon compliance with the terms and conditions stated in section 553 of the Code. Given this result and our previous holding that Davidovich's obligations to Welton under the Arbitration Award are subject to setoff under section 553, we need not decide whether the doctrine of recoupment may also be asserted in a post-discharge proceeding to offset a trustee's claim.[4]

## B. The McCafferty Case

██ Davidovich also argues on appeal that he is entitled to a 25% share of any fee ultimately collected in the McCafferty case, rather than the 12.5% share argued by Welton, because the case was originally referred to the Davidovich & Welton partnership rather than to Welton individually. In his testimony before the bankruptcy court, however, Davidovich admitted that he was aware that Welton had presented the Committee with information indicating

3. Each of these cases upheld a creditor's right to setoff a discharged debt under section 553 notwithstanding the provision in section 524(a)(2) of the Code that "[a] discharge ... operates as an injunction against the commencement or continuation of an action, the employment of process or an act, to collect, recover or offset any such debt as a personal liability of the debtor." *See Morgan,* 77 B.R. at 85; *Ford,* 35 B.R. at 279; *Slaw Constr.,* 17 B.R. at 748.

4. We also note but do not decide that a different result may obtain under either or both doctrines

when a creditor asserts a right to setoff or recoupment in a personal action brought by the debtor alone, rather an action brought by the bankruptcy trustee to recover assets for the bankruptcy estate. *See Johnson v. Rutherford Hosp. (In re Johnson),* 13 B.R. 185, 188–89 (Bankr.M.D.Tenn.1981) (holding that 11 U.S.C. § 524(a)(2) precludes setoff of a discharged debt against a post-petition judgment in favor of the debtor, as opposed to the bankruptcy estate, under the Truth in Lending Act).

that Davidovich was entitled to only a 12.5% share of this case and that he did not dispute that figure before the Committee. Tr. 47–48. Having also stipulated that the Arbitration Award was binding, *id.* at 3, and further asserted that no additional factual determinations were required with respect to enforcement of the Award, Doc. 1 at ¶ 14, Davidovich cannot now seek to reopen this issue in this proceeding. Accordingly, we affirm the bankruptcy court's holding that Davidovich is entitled by the Arbitration Award to 12.5% of any fees ultimately collected in the McCafferty case.

### C. Confirmation of Arbitration Award

It is undisputed that the Arbitration Award was conducted in compliance with the Colorado Uniform Arbitration Act, Colo.Rev.Stat. §§ 13–22–201 to 13–22–223 (1987 Replacement Vol.), and is binding between the parties. Accordingly, we reverse the bankruptcy court's dismissal of this action and order that the Award be confirmed,[5] subject to the offset and McCaffery holdings herein, so that plaintiffs may recover whatever amount, if any, is ultimately due them under that Award.

The judgment of the United States Bankruptcy Court for the District of Colorado is AFFIRMED with respect to its allowance of an offset for Davidovich's debt to Welton under the Arbitration Award and determination that Davidovich is entitled to 12.5% of any attorneys' fees ultimately collected in the McCafferty case. The judgment of the bankruptcy court is REVERSED with respect to its allowance of an offset for claims arising out of the OSM Partnership and its dismissal of this action. We REMAND this proceeding to the district court for further proceedings in accordance with this decision.

---

**5.** The district court has jurisdiction to confirm the Arbitration Award because confirmation of the Award is a civil proceeding "related to" Davidovich's bankruptcy case. *See* 28 U.S.C. § 1334(b); *Fietz v. Great W. Sav. (In re Fietz),* 852 F.2d 455, 457 (9th Cir.1988) (a civil proceeding is related to the bankruptcy case if its outcome could conceivably have any effect on the estate or could alter the debtor's rights, liabilities or freedom of action).