**Jeffrey H. COHEN**

v.

**Lisa A. GOLDBERG, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 28, 1997.

Filed May 16, 1997.

Eric A. Schaffer, Pittsburgh, for appellant.

Stanley Levine, Pittsburgh, for appellee.

Before TAMILIA, SAYLOR and SCHILLER, JJ.

TAMILIA, Judge.

Lisa A. Goldberg appeals the June 25, 1996 divorce Decree which confirmed the June 6, 1996 Decree in equitable distribution adjudicating issues relating to the parties' marital estate.

Prior to 1987, appellee, a pediatric ophthalmologist, conducted a practice in Oklahoma. Upon the failure of that practice in 1987, appellee relocated to Pittsburgh to begin a new practice. To do so, he took a bank loan in the amount of $318,000, a substantial portion of which constituted past debt from the Oklahoma practice. Appellee's father co-signed the loan. Appellee and appellant, a dermatologist, met some time thereafter, married on September 4, 1988, and had one child. Immediately prior to the marriage, on September 2, 1988, the parties entered into an antenuptial agreement which provided, in relevant part, that in the case of divorce "marital property will be divided equally." (R. 123a.) Appellee concedes that appellant paid all of the parties living expenses throughout the marriage (N.T., 6/6/96, p. 42), and that he received substantial loans from appellant during the marriage to keep his failing practice afloat. In this regard, appellant presented to the trial court, and appellee does not contest the validity of, promissory notes in the amount of $106,000. Appellant also claims she lent appellee more than $50,-000 which was not secured by promissory notes. Although appellee contests the amount, he concedes receiving loans from appellant in excess of those memorialized by the promissory notes. Despite the bank loan co-signed by his father and the loans from appellant, appellee's practice was not successful. On May 18, 1992, appellee filed a Chapter 7 petition in Unites States Bankruptcy Court. Debts listed in the petition included the loans made by appellant. One

month later, on June 22, 1992, appellee accepted salaried employment in Philadelphia and separated from appellant.[1] On September 22, 1992, appellee received a discharge in bankruptcy. In May, 1994, apparently unsatisfied with avoiding repayment of the substantial loans from appellant, appellee filed a divorce action raising claims for equitable distribution, alimony, alimony pendente lite and counsel fees. Following a hearing held on June 6, 1996, the court concluded that appellee's discharge in bankruptcy precluded appellant from receiving an offset or recoupment for the marital loans against appellee's share of the marital estate. Thereafter, the court enforced the parties antenuptial agreement, with the result that appellant was ordered to pay appellee approximately $127,000 as his share of the marital estate.

On appeal, appellant challenges the trial court's failure to allow her to offset or recoup the amount of marital loans against appellee's share of the marital estate. In rejecting these claims, the trial court found that under the Supremacy Clause of the United States Constitution, Art. VI, cl. 2, a debt which is discharged pursuant to federal bankruptcy law may not be considered in a subsequent state equitable distribution proceeding. Our review of this holding requires examination of the doctrines of setoff and recoupment, as advanced by appellant.

While the trial court found these doctrines inapplicable under our facts, it correctly recognized that under the proper facts both setoff and recoupment are recognized by bankruptcy law. See *Lee v. Schweiker,* 739 F.2d 870, 875 (3rd Cir.1984) ("Both doctrines were subsequently adopted in bankruptcy, setoff by statute, see 11 U.S.C. § 108 (1976), repealed by Bankruptcy Reform Act of 1978, Pub.L.No.95–895, 92 Stat. 2549 (1978); and recoupment by decision, see *In re Monongahela Rye Liquors,* 141 F.2d 864 (3d Cir. 1944.") (footnote omitted)). Since the validity of these doctrines under bankruptcy law cannot be questioned, we must determine whether they were properly rejected by the trial court in this case. We begin our analysis by considering the doctrines at length.

The doctrines of "setoff" and "recoupment" had their origins in the era of common law pleading, under which the scope of a "case" was far less inclusive than it is today, and under which claim joinder was far narrower. Both doctrines permitted countervailing claims, which otherwise could not have been asserted together, to be raised in a case based on any one of them.... In bankruptcy, however, setoff and recoupment play a role very different from their original role as rules of pleading. Setoff, in effect, elevates an unsecured claim to secured status, to the extent that the debtor has a mutual, pre-petition claim against the creditor. See 11 U.S.C. § 506(a). Setoff is limited, however, by the provisions of 11 U.S.C. § 553. Among those limitations is that pre-petition claims against the debtor cannot be setoff against post-petition debts to the debtor. Recoupment, on the other hand, allows the creditor to assert that certain mutual claims extinguish one another in bankruptcy, in spite of the fact that they could not be "setoff" under 11 U.S.C. § 553. The justification for the recoupment doctrine is that where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable.

*Lee, supra* at 875 (footnotes omitted).

More recently, the Third Circuit Court of Appeals again considered the doctrines of setoff and recoupment:

To grasp the scope of the recoupment doctrine, it is helpful to first distinguish recoupment from a creditor's ability to setoff certain claims. The doctrine of setoff, as incorporated in bankruptcy code section 553, gives a creditor a right "to offset a mutual debt owing by such creditor to the debtor," provided that both debts arose before commencement of the bankruptcy action and are in fact mutual. *In re Davidovich,* 901 F.2d 1533, 1537 (10th Cir.1990).

---

1. In the first year after he filed for bankruptcy and separated from appellant, appellee earned approximately $115,000 (N.T., 6/6/96, p. 39). By

1995, his salary had risen to approximately $210,000 per year. *Id.*

'Setoff, in effect, elevates an unsecured claim to secured status, to the extent that the debtor has a mutual, pre-petition claim against the creditor.' [*Lee v. Schweiker*] Generally, the mutual debt and claim are the product of different transactions. 4 Collier on Bankruptcy § 553.03 at 553–14 (Lawrence P. King, Ed., 15th ed. 1992). Pursuant to the limitations imposed by code section 553, a creditor's pre-petition claims against a debtor cannot be setoff against post-petition debts owed to the debtor. *Id.*

The Bankruptcy Code does not contain a recoupment provision. The common law doctrine of recoupment provides an exception to setoff in bankruptcy cases. Recoupment 'is the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim.' 4 Collier on Bankruptcy § 553.03, at 553–15–17 (emphasis added). This doctrine is justified on the grounds that 'where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable.' *Lee*, 739 F.2d at 875. Thus, so long as the creditor's claim arises, out of the identical transaction as the debtors, that claim may be offset against the debt owed to the debtor, without concern for the limitations put on the doctrine of setoff by code section 553. *Davidovich*, 901 F.2d at 1537. In the bankruptcy context, recouping has often been applied where the relevant claims arise out of a single contract 'that provide[s] for advance payments based on estimates on what ultimately would be owed, subject to later correction.' *In re B & L Oil Co.*, 782 F.2d 155, 157 (10th Cir. 1986). However, an express contractual right is not necessary to affect a recoupment. See *In re Holford*, 896 F.2d 176, 178 (5th Cir.1990). *In re University Medical Center*, 973 F.2d 1065, 1079–1080 (3rd Cir.1992) (emphasis added). Having defined the doctrines at issue, we must now determine whether the trial court properly found that appellant was not able to setoff or recoup her loans to appellee against his share of the marital estate. We consider the doctrines separately.

■ Initially, we agree with the trial court that setoff was not available to appellant. As noted by the Third Circuit in *Lee* and *University Medical Center*, setoff is available only when both debts arose before commencement of the bankruptcy action. Here, appellant's loans to appellee were all made prior to May 18, 1992, the date on which appellee filed for bankruptcy. Thus, appellee's debt "arose before commencement of the bankruptcy action." However, such is not the case with regard to appellant's debt. That debt arose only as a result of the equitable distribution proceedings commenced by appellee in May of 1994, two years after he filed for bankruptcy. While it is true, as appellant suggests, that the parties equitable distribution rights were determined by the antenuptial agreement of September 2, 1988, those rights did not vest under the terms of the agreement until the parties divorced, which occurred after appellee filed for bankruptcy. In this regard, it must be noted that appellee's decision to file for bankruptcy and then almost immediately separate from appellee and thereafter commence divorce and equitable distribution proceedings appears to have been carefully orchestrated to avoid repayment, in the nature of offset, of the substantial loans from appellant. Nonetheless, in light of the clear mandate of the setoff doctrine that both debts must arise before bankruptcy is filed, appellee's maneuver was successful and the trial court properly refused to allow setoff.

■ The doctrine of recoupment, however, is not limited to those situations in which both debts arise prior to bankruptcy. Instead, it is aimed precisely at those scenarios in which "application of the limitations on setoff in bankruptcy would be inequitable." *Lee*, *supra* at 875, citing *In re Monongahela Rye Liquors*, 141 F.2d at 869. Instead, as noted, the doctrine of recoupment is limited only by the requirement that both debts arise "from the same transaction." 4 Collier on Bankruptcy § 553.03, at 553–15–17; see

also, 6 Standard Pennsylvania Practice 2d § 29:6 ("Recoupment is the act of rebating or recouping a part of the claim upon which one is sued by means of a legal or equitable right resulting from a counterclaim arising out of the same transaction. Thus, recoupment is the defendant's right to present a claim, in reduction or extinguishment of the plaintiff's claim, for loss or damage sustained in the same transaction through the plaintiff's breach of contract or duty.") (emphasis added).

■■■■ Accordingly, appellant's recoupment claim turns on whether appellee's debt to her (the marital loans) arose from "the same transaction" as her debt to appellee (the equitable distribution Order). In this regard, we reiterate that while recoupment often has been allowed where a contract exists between the parties, "an express contractual right is not necessary to effect a recoupment." *University Medical Center, supra* at 1080, citing *In re Holford,* 896 F.2d at 178. We also reemphasize that recoupment is an equitable doctrine. For instance, this Court has noted that "[t]he doctrine of equitable recoupment ... provides for 'a transaction which is made the subject of a suit by a plaintiff to be examined in all its aspects and [a] judgment to be rendered that does justice in view of the one transaction as a whole.'" *Stulz v. Boswell,* 307 Pa.Super. 515, 521, 453 A.2d 1006, 1008 (1982) (emphasis added), quoting *Provident Nat'l Bank v. United States,* 507 F.Supp. 1197 (E.D.Pa.1981); see also *University Medical Center, supra* at 1081 (recoupment held applicable where both debts "arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations.") In addition to the equitable nature of recoupment, we must keep in mind that our mandate under the Divorce Code is to "effectuate economic justice between parties who are divorced or separated ... and ensure a fair and just determination in settlement of their property rights." 23 Pa.C.S. § 3102(a)(6).

Applying these principles, and in the absence of contrary authority on point, we find that the respective debts of appellant and appellee arose from the same transaction, namely, the parties' marriage. Although recoupment does not require the formality of a contractual relationship, *University Medical Center, supra,* our law has long recognized that "[m]arriage is a civil contract made between parties with the capacity to contract[.]" *Lampus v. Lampus* 541 Pa. 67, 74, 660 A.2d 1308, 1311 (1995); see also Black's Law Dictionary 876 (5th ed. 1979) (defining marriage as "a contract, according to the form prescribed by law, by which a man and woman capable of entering into such contract, mutually engage with each other to live their whole lives (or until divorce) together in state of union which ought to exist between a husband and wife.").

While it is clearly arguable that marriage is not a contract in the true sense of the word, the Supreme Court of the United States has enlarged its standing to something greater than a contract, stating:

[i]t is not, then, a contract within the meaning of the clause of the constitution which prohibits the impairing the obligation of contracts. It is, rather, a social relation, like that of parent and child, the obligations of which arise not from the consent of concurring minds, but are the creation of the law itself, a relation the most important, as affecting the happiness of individuals, the first step from barbarism to incipient civilization, the purest tie of social life and the true basis of human progress.

*Maynard v. Hill,* 125 U.S. 190, 211, 8 S.Ct. 723, 730, 31 L.Ed. 654 (1888), citing *Adams v. Palmer,* 51 Me. 480, 483 (1863). Clearly, the institution of marriage is unique under our law and imposes duties which are not analogous to other relationships, contractual or otherwise, sanctioned by the state. We are simply unwilling to reduce that institution to nothing more than a series of random events which are related neither to one another nor to the unique relationship from which they arose.

■■■■ Instantly, there can be no doubt that appellant's loans to appellee were made only because the parties were spouses. Any doubt as to this fact is erased when it is recalled that one-third of the loans were made without appellant receiving a promisso-

ry note or collateral in return. It is equally obvious that appellant would not have incurred the equitable distribution debt but for the marriage. To now permit appellee to escape recoupment by claiming that the loans from appellant and the equitable distribution proceeding are different transactions would be to ignore the common element giving rise to both debts, and without which neither would exist. This result can be avoided only by construing the parties' marriage as a single transaction from which both debts arose. In this manner, the equitable principles underlying both the doctrine of recoupment and our Divorce Code can be employed. Finally, echoing the belief of the trial court, appellee claims that any recoupment by appellant in a state equitable distribution proceeding would frustrate the discharge provisions of federal bankruptcy law and thus violate the Supremacy Clause of the United States Constitution. We perceive no such violation because, far from violating bankruptcy law, we are merely applying a doctrine, recoupment, which is fully recognized by that law. See *Lee* and *Monongahela Rye Liquors, supra.* The Supreme Court in *Maynard, supra,* extolls the supremacy of marriage over other institutions and one completely regulated by law as to give the parties no private right to modify the status which is a creature of the legislature. In *Maynard,* the Supreme Court defined the almost hallowed nature of marriage stating:

> Marriage, as creating the most important relation of life, as having more to do with the morals and civilization of a people than any other institution, *has always been subject to the control of the legislature. That body prescribes the age at which parties may contract to marry, the procedure or form essential to constitute marriage, the duties and obligations it creates, its effects upon the property rights of both, present and prospective,* and the acts which may constitute grounds for its dissolution.

*Id.* at 205, 8 S.Ct. at 726 (emphasis added). Thus, marriage in this case incorporated the rights and obligations as to marital property contained in the Domestic Relations Code and, as between the parties, one party to the marriage may not become enriched at the expense of the other by wiping out a marital contribution by the other while acquiring a greater proportion of the remaining marital assets than equity permits. We cannot believe it was the intent of Congress in enacting the Bankruptcy Laws to give one party to a marriage an inequitable advantage over the other because one could eliminate his debt to the marital estate while retaining full claim to the remainder.

Unfortunately, a by-product of the trial court's holding that appellant could not recoup her loans to appellee was that the precise amount of the loans was never established. As noted, appellant introduced promissory notes totalling $106,000, although she claimed that the total amount of loans exceeded $160,000 (N.T. at 53). On the other hand, while appellee acknowledged that the loans exceeded the face value of the promissory notes, he did not believe that the loans totaled $160,000 (N.T. at 42). A remand is necessary for the court to resolve this issue. Consistent with the analysis of this Opinion, the court must then allow appellant to raise the doctrine of recoupment in defense to appellee's equitable distribution action. It is only upon completion of these steps that the court can "effectuate economic justice" under the Divorce Code.

Based on the foregoing, we hold that although the doctrine of setoff is unavailable to appellant, she is entitled to recoup her marital loans to appellee to the extent of his equitable distribution claims. Accordingly, we vacate the June 6, 1996 Equitable Distribution Decree and remand for proceedings consistent with this Opinion.

Equitable Distribution Decree vacated; case remanded. Jurisdiction relinquished.