Jerry C. PICARDI, etc., Plaintiff,

v.

CHICAGO TRUCK DRIVERS, et al., Defendants.

No. 83 C 0343.

United States District Court,
N.D. Illinois, E.D.

Oct. 20, 1983.

On Motion for Reconsideration
Jan. 27, 1984.

Charles Pressman, Chicago, Ill., for plaintiff.

Earl L. Neal, Terrance Diamond, Langdon D. Neal, and Paul L. Glover, Chicago, Ill., for defendants.

Carl L. Steiner, Joel H. Steiner, Edward Bazelon, of Ezelrod, Goodman, Steiner & Bazelon, Chicago, Ill., for Adolph J. Neilsen.

James J. Flynn of Quinn, Jacobs, Barry & Miller, Chicago, Ill., for defendant Peter Shannon & Co.

Theodore J. Tsoumas, Dennis L. Frostic, Michael P. Tone, of Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for defendant Peter Shannon & Co.

## MEMORANDUM OPINION AND ORDER

PARSONS, District Judge.

This case comes before me for ruling on defendants' motion for summary judgment and the motion of co-defendant, Peter Shannon & Co., to dismiss for failure to state a claim on which relief can be granted.

The first motion to be considered is the motion for summary judgment. Defendants move pursuant to Rule 56(b), Fed.R. Civ.P., for summary judgment on the ground that claims asserted by plaintiff are barred by the doctrine of *res judicata* by reason of a consent decree which earlier was entered in a related action *Donovan v. Nave*, No. 82 C 2210 (N.D.Ill.1983).

## FACTS

On April 9, 1982 a suit was filed by Raymond Donovan, Secretary of Labor, against certain individuals: (1) Guy Nave, (2) Marjorie Hickey, (3) Adolph Nielsen, and (4) Elmer Kirchwehn, against (5) the Chicago Truck Drivers Helpers & Warehouse Workers Union (Independent), hereafter the CTDH & WWU (I), or "the union", (6) the union's Pension Plan and (7) the union's Health & Welfare Plan.

The Secretary's action alleged that the trustees of the union's *Pension Plan* had breached their fiduciary duties by contracting with the Union for provision of administrative services to the Pension Plan, by failing to consider contracting with service providers other than the Union, and by causing the Plan to engage in transfers of Plan assets to the Union and to union employees in violation of ERISA. Against Nave alone the action alleged that he determined on behalf of the Union the amount to be charged to the Plan for services rendered it by the Union. Then as a Plan trustee he participated in Plan meetings in which the Board approved the Union's proposals for compensation. This allegedly was acting upon behalf of both the Union and the Plan whose interests were adverse.

As to Hickey & Kirchwehm, Welfare Plan trustees, the Secretary's action alleged that they failed in their fiduciary duties to *Welfare Plan* participants and beneficiaries by maintaining a similar arrangement with the Union to provide services to the Welfare Plan, by failing to consider alternate service providers, by causing the Welfare Plan to engage in transactions resulting in the furnishing of services and facilities to the Plan by the Union, parties of adverse interests, and by causing the Welfare Plan to transfer Plan assets to the Union. All alleged acts would be in violation of ERISA.

The Secretary's complaint sought equitable and restitutionary relief as follows: that the court (1) enjoin the defendants and persons acting in concert with them from engaging in acts in violation of their fiduciary duties under ERISA, (2) appoint an independent receiver with control over administrative services for the Plan, (3) enjoin the defendant trustees, Nave, Hickey, Nielsen, and Kirchwehm and their successors from exercising control over these administrative services during the period of the independent receiver's services, (4) order the defendant trustees to use plan assets to compensate service providers retained by the court's independent receiver, (5) order Nave and Nielson to make good to the *Pension Plan* all losses that had resulted

from their fiduciary violations (6) order defendants Hickey and Kirchwehm to make good to the *Welfare Plan* all losses resulting from their fiduciary violations and, (7) order the Union to restore to the plan the excess amounts paid by the plans to the Union in violations of ERISA.

Nine months later on January 18, 1983, plaintiff Picardi filed the instant action against the same defendants named in the 1982 Secretary's action, but also against additional union employees, Mike Keegan, John H. King, Walter Mullady, Raymond Emerick, J. Donald Ryan, Ed Fenner, Barney Keegan, Ed Kaminski, Louis Matassa, Al Hayes, Bernie Benard, Pete Androuis, Fred Boudreau, Mike Campbell, Jim Cogley, Arthur Costello, Tony Lullotta, Louis Depaulos, Edwin Fenner, Edward Glavin, John Johnson, Joe Montalto, Bob Nowak, and Ray Seaman, as well as against an accounting firm, one Peter Shannon and Company.

Recently the Secretary of Labor mailed a copy of a proposed consent decree to be entered in his case and a notice of the consent decree hearing to Mr. Charles Pressman, Plaintiff Picardi's attorney in this case. This mailing came six working days before the consent decree hearing. The defendants in the first case also served copies of the same decree on Mr. Pressman three working days before the hearing. On March 8, 1983 Judge Perry approved the consent decree and dismissed the Secretary's lawsuit with prejudice.

The *Picardi case* which was filed some seven weeks before the consent decree was signed in the *Donovan case* arises out of the same and additional facts.

Plaintiff Picardi is a member of the Union and a beneficiary of the pension and welfare plans. His is a class action brought on behalf of all the union members and plan beneficiaries. He charges (1) that the Union and other defendants appropriated unreasonable sums of money for the administration of the Plans in violation of ERISA, (2) that the defendants conspired to cause the Plans to pay these illegal and unreasonable charges, (3) that payments by both Plans to the Union's business agents were illegal under ERISA, (4) that Peter Shannon and Company, the accountants, breached its own fiduciary duty to the Plans in violation of ERISA, (5) that each of the defendants participated in or failed to rectify breaches of fiduciary obligations by other defendants, all in violation of ERISA, (6) that Union officials violated fiduciary obligations imposed on them by § 501(b) of the LMDRA, (7) that the defendants engaged in acts in violation of Title 18 U.S.C. § 664—relating to embezzlement from pension and welfare funds, acts which are unlawful under the Racketeer Influence and Corrupt Organization Act (RICO), 18 U.S.C. § 1961, *et seq.*, (8) that the defendants further had engaged in acts in violation of Title 18 U.S.C. § 1341—relating to mail fraud—also unlawful under RICO, (9) that the defendants had breached common law fiduciary duties, and (10) that Shannon had negligently prepared studies for representing the value of services rendered by the Union to the plans. Count eleven then reasserts all above mentioned causes of action derivatively on behalf of the Plans themselves.

Plaintiff Picardi in this case also seeks equitable relief, including (1) injunctions to prevent the Union from providing services to the Plans and from paying money to the defendants in connection with those services, (2) removal of Shannon as auditor, (3) an accounting of funds of the present and prior Plans, (4) an order directing defendants to exhaust their private or insurance funds before requiring the Union to pay judgments, (5) an order directing plaintiff's attorneys to procure an alternate service provider under the supervision of this court, and (6) an injunction to prevent Shannon and Co. hereafter from performing services for the Plans and authorizing Plaintiff Picardi's attorneys to supervise the procurement of some other independent auditing services for the Plans.

In this case, however, the plaintiff goes on to seek money damages for the full amount to be found to be due for each violation of ERISA and common law duties,

as well as punitive damages under RICO of three times the actual amount of damages, the cost of the suit and reasonable attorneys' fees.

## I.

■ The question with respect to the defendants' motion for summary judgment is whether the consent decree in *Donovan v. Nave* operates as a *res judicata* bar to the *Picardi case*. This question requires an examination of the principles of *res judicata* and collateral estoppel. According to *Cromwell v. County of Sac.*, 94 U.S. 351, 24 L.Ed. 195 (1876) the judgment in a prior suit if rendered on the merits is *res judicata* in a subsequent action between the same parties on the same claim or cause of action and operates as an absolute bar not only to every ground of recovery or defense actually presented in the prior action but also to every ground which might have been presented. However, where the second action is on a different claim or demand, the prior judgment operates as an estoppel only as to those issues actually litigated in the prior suit.

The case of *Ruskay v. Jensen*, 342 F.Supp. 264 (S.D.N.Y.1972) offers a useful frame work for examining these rules:

1. Were the parties in the prior action the same as in the present one?

2. Did the prior action go to judgment?

3. If so, was the judgment on the merits?

4. Were the claims or causes of action in the prior action the same as in the present one?

5. If not, what issues were actually litigated and determined in the prior suit?

A. The first question is crucial to the issue now before us. The plaintiffs in the two cases are clearly not the same. The only question, therefore, is whether they are in privity. Under ERISA, 29 U.S.C. 1132(a)(2) a civil action may be brought "by the Secretary or by a participant, beneficiary, or fiduciary." The law does not specifically create a representative relationship; the Secretary's right to sue is equal to that of the individual plaintiff here. Similarly, RICO, 18 U.S.C. § 1961 *et seq.* allows "any person" or the Attorney General (or any designated department employee) to institute proceedings. Again it creates no representative relationship between the individual plaintiff and the Attorney General. Under the Labor-Management Reporting and Disclosure Act (LMDRA) 29 U.S.C. § 501(b), any member of a labor organization may sue any officer or other representative of the labor organization who has violated his fiduciary responsibility on failure of the governing board or officers to take action. Here, again, except by virtue of the use of a class action, the plaintiff sues only for himself. Thus, no specific representative relationship is created by ERISA, RICO, or LMDRA, the three theories under which this plaintiff brings his case.

■ Privity for *res judicata* purposes expresses the idea that a person is so identified in interest with the party in the previous litigation that precisely the same legal right in respect to the subject matter is involved. In this case, the interests represented by the Secretary and by Picardi are not precisely the same. The Secretary's action is brought to assure the Union's compliance with statutory law. He represents the "public interest". Whereas, Mr. Picardi brings his action to obtain relief from damage to his personal interest and that of the other members of his class, in their retirement, and in their medical and other benefits. It cannot logically be said that this plaintiff here is in privity with the Secretary of Labor.

As a matter of policy, the statutes under which this case is brought ERISA, RICO and LMDRA all give individuals a right to sue on their own behalf. To hold that an individual plaintiff's suit based on injury to his personal right to benefits can be precluded by the suit of a governmental authority who in the public interest is enforcing general compliance with the law would contravene the purpose of these statutes.

B. Let us turn next to the second question in the framework of Judge Metzner in *Ruskay v. Jensen:* did the prior action go to judgment? The form of judgment in the Secretary's case was a consent decree issued without findings of fact or conclusions of law. A consent decree is entered by agreement of the parties; it is not the judgment of the court though it is entered with the approval of the court. A consent decree, considerably like a contract, binds only the consenting parties and their privies. Thus, the Secretary's action concluded in a judicially sanctioned agreement binding only on the United States as a party and the defendants. It is questionable whether Mr. Picardi himself or as a representative in a class action later could open up the first case in an effort to seek court sanctions against the defendants for failing to live up to the decree to which they consented. Even if he could, he would be bound by the four corners of the decree and could not ask for what he is asking here. The doctrine of "the four corners of a consent decree" most recently has been explained by this circuit in *White v. Roughton*, 689 F.2d 118 (7th Cir.1982) and in *Sportmart, Inc. v. Wolverine World Wide, Inc.*, 601 F.2d 313 (7th Cir.1979). The exact situation here was not present in those cases, nor in the Supreme Court's lead cases upon which they depend, *U.S. v. ITT Continental Baking Co.*, 420 U.S. 223, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975); *U.S. v. Armour & Co.*, 402 U.S. 673, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971); *Hughes v. United States*, 342 U.S. 353, 72 S.Ct. 306, 96 L.Ed. 394 (1952), but the reasoning in them and the references recited in them confirm the hornbook law announced here.

C. The third question was, was the judgment one on the merits? As noted above, a consent decree is not a judgment of the court, but an agreement by the parties entered with the court's approval. Even though there are cases in which a consent decree operates like a judgment on the merits, the critical principle here is that it can operate like a judgment on the merits in this case only as to the parties to the decree and their privies. Here Picardi and the class he represents are not in privity with the Secretary because their purposes are not the same.

D. Over the years several tests have emerged to determine the answer to the fourth question: whether the claims or causes of action in a prior action are the same as those in a subsequent action. The first test is articulated in the case of *Hurn v. Oursler*, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933) and can be referred to as "the same right and wrong test". In that case a seaman was suing for an injury sustained while working aboard ship and was entitled to one recovery only, whether the injury was due to one or several acts of negligence. The court stated that "a cause of action does not consist of facts but of the unlawful violation of a *right* which the wrongs show." *Id.* at 246, 53 S.Ct. at 590 [quoting *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, at 321, 47 S.Ct. 600, at 602, 71 L.Ed. 1069] (Emphasis added). Another way of phrasing this test is whether the same right is infringed by the same wrong.

A second test was enunciated by Mr. Justice Cardozo in *Schuylkill Fuel Corp. v. B. & C. Nieberg Realty Corp.*, 250 N.Y. 304, 165 N.E. 456 (1929). This test is whether the substance of the rights or interests established in the first action will be destroyed by prosecution in the second.

Finally, a third test relates to whether the same evidence would sustain both judgments. Closely related to this is whether there is identity of grounds. *Wilson Cypress Co. v. Atlantic Coast Line R. Co.*, 109 F.2d 623 (5th Cir.1940), *U.S. v. Haytian Republic*, 154 U.S. 118, 14 S.Ct. 992, 38 L.Ed. 930 (1894).

For the *Picardi* case the Union's wrong is the same as in the Secretary's case; however, the right infringed is different. The Secretary's right in bringing the action is a statutory duty to vindicate the public interest. Picardi's right stems from his own personal injury due to the diminished funds available to him for benefits.

The substance of the rights established in the first action is that the Trustees shall

cease employing the Union as a service provider and shall not compensate union employees for services previously covered under the management fee. The consent decree further provided that a Union reimbursement to the Plans of $150,000 would constitute a total release of any and all claims asserted *by the Secretary of Labor* against defendants ... The substance of the rights established in the consent decree would not be impaired by the *Picardi* action because the *Picardi case* seeks a similar result in that it seeks to divorce the Union from the Plan management. In addition, however, Picardi seeks an accounting and repayment of monies wrongfully charged by the Union. The consent decree provided for a release of all claims asserted by the Secretary of Labor—it could not release the defendants from claims not covered by that action.

Finally, as to the evidence in the two cases. Much of the evidence is the same, however, the inclusion of Peter Shannon and Co. brings in a new set of facts not present in the Secretary's litigation. These facts are necessary to the RICO claim and must be addressed. Thus, under the classic tests for determining what is a cause of action for *res judicata* purposes, the claims in the Secretary's suit do not address the entire scope of the claims in the *Picardi case* and, therefore, the causes of action are not the same.

E. Turning now to the final question—what issues were actually litigated and determined in the prior suit? Because the prior suit resulted in a consent decree issued without a trial and with no findings of fact or conclusion of law, this question is easily answered. None of the issues were actually litigated or determined.

In conclusion, the consent decree in *Donovan v. Nave* does not operate as a *res judicata* bar to the Picardi action. The Secretary and Picardi are not in privity; therefore, the consent decree is not binding on Picardi. In addition, the claims in the two actions are not the same because the plaintiffs represent different rights and the claims in the first case do not address the entire scope of the claims in the second. For these reasons, defendants' motion for summary judgment as presented at this time must be denied.

## II.

The motion of Peter Shannon and Co. to dismiss for failure to state a claim also must be denied. It has been established that the consent decree in *Donovan v. Nave* does not have *res judicata* effect on the *Picardi case.* The release embodied in the consent decree relied on by Shannon has no greater effect than the consent decree itself, and besides Shannon and Co. was not a defendant in *Donovan.*

The terms of the consent decree do not address the plaintiff's complaint against Shannon and no relief was provided which would affect Shannon's position as auditor. This issue was neither addressed nor litigated in the prior action.

The RICO claims are sufficiently well plead to invoke the statute. Under *Schact v. Brown,* 711 F.2d 1343 (7th Cir.1983), the liberal pleading policy of the Federal Rules of Civil Procedure prevent dismissal of a meritorious action for purely formal or technical reasons.

With respect to Shannon's argument that Picardi's claims are barred by the statute of limitations, ERISA § 413(a) codified at 29 U.S.C. § 1113(a) provides that in the case of a charge of fraud or concealment the action may be commenced within six years after the date of discovery of the conduct complained of. From the pleadings it is reasonable to presume at this time that the plaintiffs are well within the six years allowed them.

For the above reasons, the motion of Peter Shannon and Co. to dismiss for failure to state a claim on which relief can be granted is denied without prejudice.

### ON MOTIONS FOR RECONSIDERATION

Motions of all defendants, including Peter Shannon and Company, for reconsidera-

tion or in the alternative for interlocutory appeal are hereby denied.

It is clear as defendants note that the Secretary of Labor is empowered to bring civil actions to redress breaches by a union of its fiduciary responsibility; the issue, however, is whether the beneficiary, Picardi, is completely bound by a settlement negotiated between the Secretary and the Union. The legislative history shows that ERISA was designed to provide broad remedies for redressing or preventing violations of the statute and to remove jurisdictional and procedural obstacles which have hampered enforcement of fiduciary responsibilities. (See *Senate Report No. 127* —Enforcement Section) It would be inconsistent with the remedial purpose of this statute to deny Picardi redress for fiduciary violations left uncorrected by the Secretary's settlement.

In *Donovan v. Cunningham*, 716 F.2d 1455 (5th Cir.1983) the Secretary of Labor was appealing a judgment against him in an action he had brought to enforce fiduciary obligations under ERISA. While the Secretary was appealing the decision, beneficiaries of the Employee Stock Ownership Plan settled a suit seeking the same relief in another District Court. The Fifth Circuit rejected the *res judicata* argument and recognized the distinct interests represented by the Secretary of Labor and the Plan beneficiaries. The secretary sought to vindicate the public interest; whereas, the plaintiffs were interested in recouping their own economic losses. *Id.* at 1462. It is true that it was the Secretary of Labor who was found not barred by *res judicata* in *Donovan v. Cunningham* while in this case it was the beneficiary plaintiff; nevertheless, the distinction between their representative interests was recognized in both cases. The Secretary's interest as provided for in ERISA is not precisely the same as Picardi's. There is no clear cut privity for *res judicata* purposes which would preclude under law Picardi's position in this case.

In addition, Picardi asserts RICO, LMDRA, and common law claims which the Secretary is not authorized to assert. Unlike the Attorney General, his authority to act is characteristically limited. Picardi's case also involves another defendant, Shannon and Co., though, of course, this is not the strongest reason supporting the Picardi position.

A careful review of the motion to reconsider and the briefs in support of it, leave the court even more certain of the propriety of its position taken in its Memorandum Order of October 20, 1983. Defendants' motion for reconsideration, to the extent it seeks a reversal of the order, is denied.

We turn now to the Motion to Permit Interlocutory Appeal. Under 28 U.S.C. § 1292(b) there are two requirements for interlocutory appeal, first, that a controlling question of law as to which there is substantial ground for difference of opinion be involved, and second, that an immediate appeal from the order may materially advance the ultimate termination of the litigation. The more important requirement of these is the first. The difference of opinion must be found in case law, not in the minds of the litigants. Defendants have presented nothing to show a substantial ground for difference of opinion.

Defendant Shannon and Co. offered one case, *Martin v. Bankers Trust Company*, 565 F.2d 1276 (4th Cir.1977) to illustrate the fact that there is a difference of opinion. The key issue in the *Martin* case dealt with federal jurisdiction. Martin's claim was based on events which occurred before ERISA was signed into law. The holding of the case was that federal jurisdiction was precluded where a claim under ERISA was based on events which occurred before the Act had been signed into law. Without creating an issue as to whether the statute was restrictive as to the number of suits on the same subject, Judge Field wrote:

> ERISA was enacted by the Congress as a comprehensive program to protect individual pension rights by establishing minimum standards for the regulation of private retirement plans. (Citation omitted) Among other things, it establishes

requirements for reporting and disclosure, participation, vesting, funding and fiduciary responsibility under such plans. The statute authorizes either the Secretary of Labor or any participant, beneficiary or fiduciary to bring a civil action to enforce compliance with the various provision of ERISA. *Id.* at 1278.

The purpose of this excellent paragraph was to emphasize the broadness of ERISA. To read into the word "either" a preclusion of a claim such as Picardi's once the Secretary has filed his case would be to seriously misinterpret the point of the paragraph.

As for the second requirement for interlocutory appeal, in the case at hand, the non-ERISA claims would still require further proceedings even if the ERISA claims were appealed. Therefore, the interlocutory appeal would not materially advance the ultimate termination of the litigation.

For the reasons stated, defendants' motion for reconsideration or in the alternative for interlocutory appeal is denied.