Robert REICH, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

DAVIDSON LUMBER SALES, INC., EMPLOYEES RETIREMENT PLAN, and Franz C. Stangl, Defendants.

Robert REICH, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

DAVIDSON LUMBER SALES, INC., EMPLOYEES RETIREMENT PLAN, and David R. Davidson, Jr., Defendants.

Nos. 90–C–716W, 91–C–870J.

United States District Court, D. Utah, C.D.

May 17, 1993.

Steven R. DeSmith, Office of Sol., U.S. Dept. of Labor, San Francisco, CA, for plaintiff.

Brent R. Armstrong, Jill L. Dunyon–Hansen, Claudia F. Berry, Suitter, Axland, Armstrong & Hanson, Salt Lake City, UT, for defendant Davidson.

Dean C. Andreason, Campbell, Maack & Sessions, Salt Lake City, UT, for defendant Franz C. Stang.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter is before the court on the Motion to Dismiss brought by defendant David R. Davidson, Jr. ("Davidson") on the claims of plaintiff Secretary of Labor, United States Department of Labor (the "Secretary"). A hearing on the motion was held on March 8, 1993. Davidson was represented by Jill L. Dunyon–Hansen, and Claudia F. Berry. The Secretary was represented by Steven R. DeSmith. Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties. At the hearing the court took the matter under advisement. Since that time, the court has further considered the law and the facts relating to the motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

## I. BACKGROUND

This case involves an action by the Secretary against Davidson and others for alleged breaches of the fiduciary responsibility provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"). The Secretary commenced this action against Davidson on August 15, 1991, under section 502(a)(2) and (5) of ERISA.[1] ERISA § 502(a)(2), (5), 29 U.S.C.A. § 1132(a)(2), (5) (West 1985). The Secretary alleges that Davidson is, and at all times relevant has been, a named trustee and fiduciary of the Plan. Compl. at 2. In addition, the Secretary alleges Davidson is, and has been, a party in interest. *Id.* According to the Secretary, Davidson violated his fiduciary obligations to the Plan by engaging in the following transactions between 1977 and 1985: (1) causing the Plan on November 29, 1977 to lend $150,000.00 to Davidson and his wife, Compl. ¶¶ 7–8; (2) causing the Plan on November 23, 1979 to lend $56,270.00 to Davidson, *id.* ¶¶ 9–10; (3) causing the Plan, on June 1, 1984 to reconvey to an affiliated entity real property securing the Plan's November 23, 1979 loan to Davidson, *id.* ¶¶ 11–13; (4) causing the Plan on December 21, 1979 to lend $200,000.00 to a third party without obtaining adequate security for the loan, *id.* ¶ 14(a); (5) renewing the $200,000.00 loan on several occasions, the latest renewal date being May 31, 1985, notwithstanding the fact that the loan was in default, *id.* ¶ 14(b); and (6) causing the Plan on August 28, 1985 to release the third party from its obligations under the December 21, 1979 loan and to accept a note from Davidson in an amount equivalent to the debt owed by the third party. *Id.* ¶ 15.

The Secretary requests this court to order Davidson to rescind all prohibited transactions, to reimburse the Plan for all losses incurred as a result of his alleged breaches of fiduciary duty, and to forfeit his participant interest in Plan assets to the extent of his monetary liability to the Plan. *Id.* at 7–8. In addition, the Secretary requests this court to appoint a permanent, independent fiduciary to manage the Plan's assets, enjoin Davidson from acting in any fiduciary capacity with respect to any em-

---

**1.** The Secretary filed civil action 90–C–716W against the Davidson Lumber Sales, Inc. Employees Retirement Plan (the "Plan") and defendant Franz C. Stangl in August of 1990, but refrained from joining Davidson in the 90–C–716W Complaint in order to pursue pre-filing settlement negotiations with him. Pursuant to these negotiations, the Secretary obtained from Davidson a pre-filing waiver of the statute of limitations. The negotiations proved unsuccessful, leading the Secretary to file civil action 91–C–870J in August of 1991. Civil action 91–C–870J was consolidated into civil action 90–C–716W on October 16, 1992, by order of the Honorable Bruce S. Jenkins, Chief Judge of the United States District Court for the District of Utah. All citations are to the 91–C–870J Complaint unless noted otherwise.

ployee benefits plan for a period of not less than ten years, and enjoin Davidson from taking any action with respect to any employee benefit plan with which he is affiliated, or causing such plan to take any action, that would violate Title I of ERISA. *Id.* at 7.

Davidson moved to dismiss the Secretary's action under § 524 of the United States Bankruptcy Code (the "Bankruptcy Code"), which operates as an injunction against creditors holding discharged debts from seeking to collect, recover, or offset such debts as a personal liability of the debtor. 11 U.S.C.A. § 524(a)(2) (West 1993). In support of his motion, Davidson provided the court with a copy of an order of the United States Bankruptcy Court for the District of Utah, dated December 7, 1988, discharging Davidson and his wife "from all personal liability for debts existing on the date of commencement of this case, or deemed to have existed on such date pursuant to § 348(d) of the Bankruptcy Code (Title 11, United States Code)." [2]

In opposing Davidson's Motion to Dismiss, the Secretary relies on § 523(a)(3)(B) of the Bankruptcy Code, which provides that an unscheduled debt of defalcation will not be discharged unless the creditor has "notice or actual knowledge of the case" in time to permit a timely filing of a proof of claim and a timely request for a determination of nondischargeability. *Id.* § 523(a)(3)(B). The Secretary argues that to have had "actual knowledge" under § 523, he must " 'have had specific knowledge of the actual breach of duty upon which he sues.' " Pl.'s Opp'n to Def. David R. Davidson's Mot. Dismiss at 4 (quoting *Brock v. Nellis*, 809 F.2d 753, 755 (11th Cir.), *cert. dismissed*, 483 U.S. 1057, 108 S.Ct. 33, 97 L.Ed.2d 821 (1987)). The Secretary then argues he did not have actual knowledge under such a definition because, although the Department of Labor initiated an investigation into possible ERISA violations by Davidson prior to the bar date for filing a request for a determination of nondischargeability, the investigation was not completed until almost seventeen months after that date. *Id.*

The Secretary also opposes Davidson's Motion to Dismiss by arguing, in the alternative, that even if Bankruptcy Code § 524(a)(2) bars the Secretary's efforts to recover on the debts that were the subject of the bankruptcy discharge, the Secretary should be permitted to offset Davidson's beneficial interest in the Plan to the amount of any judgment rendered in this case. The Secretary argues that offset is an appropriate remedy under ERISA and that failure to grant offset in the case at hand would undermine the purposes of ERISA. *Id.* at 7–9. The court addresses these issues in order.

## II. STANDARD OF REVIEW

Although Davidson presents his motion as a motion to dismiss, matters outside the pleadings were presented by both parties and not excluded by the court. Therefore, under Rule 12(b) of the Federal Rules of Civil Procedure, this court treats the motion to dismiss as a motion for summary judgment.[3] Fed.R.Civ.P. 12(b).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party.

---

**2.** In July of 1988, Davidson and his wife, June B. Davidson, filed a petition for relief under chapter 11 of the Bankruptcy Code. The chapter 11 case subsequently was converted into a case under chapter 7 of the Bankruptcy Code.

**3.** Rule 12(b) provides in relevant part:
If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be

granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.
Fed.R.Civ.P. 12(b).

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir.1991).

Once the moving party has carried its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Gonzales v. Millers Casualty Ins. Co.,* 923 F.2d 1417, 1419 (10th Cir.1991).[4] The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

In considering whether there exists a genuine issue of material fact, the court does not weigh the evidence but instead inquires whether a reasonable jury, faced with the evidence presented, could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Clifton v. Craig,* 924 F.2d 182, 183 (10th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991).[5] Finally, all material facts asserted by the moving party shall be deemed admitted unless specifically controverted by the opposing party. D. Utah R. 202(b)(4).

### III. DISCUSSION

*A. Section 523(a)(3)(B)*

The discharge of claims in a chapter 7 case is governed by Bankruptcy Code §§ 727 and 523. Section 727(a) requires the bankruptcy court to discharge the debtor unless certain circumstances, not relevant here, exist. 11 U.S.C.A. § 727(a) (West 1979 and Supp.1993). Section 727(b),

in turn, provides that a discharge under § 727(a) discharges the debtor from all debts that either arose before the date of the chapter 7 order for relief, or are determined under § 502 as if they were prepetition claims, "[e]xcept as provided in section 523 of this title." *Id.* § 727(b) (West 1979).

Section 523 excepts certain debts from discharge. Relevant here, § 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." *Id.* § 523(a)(4). Section 523(c)(1), provides the mechanism for invoking this exemption:

(c)(1) Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

*Id.* § 523(c)(1). Thus, § 523(c)(1) generally requires a creditor to take affirmative action by requesting the court to determine the dischargeability of the enumerated debts before they are excepted from discharge.

Bankruptcy Rule 4007(c) ("Rule 4007(c)") provides the procedure for determining the dischargeability of a debt under § 523(c)(1), and requires the filing of a complaint by the debtor. Rule 4007(c) provides:

A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a). The court shall give all creditors not less than 30 days notice of the time so fixed in the manner provided in Rule 2002. On motion of any party in interest, after hearing on notice, the

---

4. The summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

5. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.

Bankr.Rule 4007(c). Thus, Rule 4007(c) establishes a strict time limitation on the filing of the complaint, but allows the court to extend this time period for cause.

It is undisputed that the Secretary did not file a timely § 523(c) complaint or a request for an extension of the filing deadline. The Secretary relies, however, on Bankruptcy Code § 523(a)(3)(B), referenced in § 523(c)(1), which provides an exception to the time requirements of Rule 4007(c) for unscheduled debts. Section 523(a)(3)(B) provides:

(a) A discharge under section 727, ... does not discharge an individual debtor from any debt—

(3) neither listed nor scheduled under section 521(1) ... in time to permit—

(B) if such debt is of a kind specified in paragraph (2), (4) or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;

11 U.S.C.A. § 523(a)(3)(B) (West 1993). As its language indicates, § 523(a)(3)(B) excepts from discharge certain enumerated debts when the debts are not properly scheduled in time for the creditor timely to file a § 523(c) complaint unless the creditor has notice or actual knowledge of the bankruptcy case in time to comply with the filing requirements established by § 523(c)(1) and Rule 4007(c).

As a threshold matter, the question arises whether the Secretary's right to object to Davidson's discharge under § 523(a)(3)(B) exists independently of the Plan's right or is merely derivative of the Plan's right. In other words, if the Plan, through its fiduciaries, participants, or ben-

eficiaries, is unable to claim the benefit of § 523(a)(3)(B) because, as to them, the requirements of that section are not met, is the Secretary similarly precluded from objecting to Davidson's discharge based on that section?

In order for § 523(a)(3)(B) to apply, two requirements must be met. First, the debts as to which the discharge is ineffective under § 523(a)(3)(B) must be "neither listed nor scheduled under section 521(1)" in time to file a timely proof of claim and a timely § 523(c) complaint. 11 U.S.C.A. § 523(a)(3)(B) (West 1993). Second, even if the debts are unscheduled, § 523(a)(3)(B) does not apply if the creditor has "notice or actual knowledge of the case" in time to act to protect its rights. *Id.*

■ With regard to the Plan, neither of these requirements is met. It is undisputed that Davidson properly scheduled the debts forming the basis for the Secretary's action insofar as the Plan is concerned. *See* Mem P. & A. Supp. Def.'s Mot. Dismiss at 2–6 (asserting all debts properly scheduled as to Plan); Pl.'s Opp'n Def. David R. Davidson's Mot. Dismiss at 2 (accepting for purposes of motion the statement of facts submitted by Davidson, with exception of statement that Secretary is "acting for and on behalf of beneficiaries of the Davidson Lumber Sales, Inc. Employees Retirement Plan."). It is also undisputed that the Plan was listed on the mailing matrix in Davidson's bankruptcy proceedings and thus had notice or actual knowledge of the case. Therefore, if the Secretary's rights are merely derivative of the Plan's, the Secretary presumably would be precluded from invoking § 523(a)(3)(B) as an exception to Davidson's discharge.

■ The court need not resolve this issue, however, because even assuming that the Secretary's rights are not merely derivative of the Plan's for the purposes of § 523(a)(3)(B),[6] the requirements of the sec-

---

**6.** *Cf. Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 694 (7th Cir.1986) (Secretary of Labor's interest in ERISA action separate and distinct from private plaintiffs' interests; therefore, Secretary of Labor not barred by doctrine of res

judicata as a result of prior litigation by private plaintiffs; *Picardi v. Chicago Truck Drivers,* 581 F.Supp. 794, 797 (D.Ill.1983) (union member's ERISA action not barred by res judicata as a result of prior consent judgment entered into in

tion are not met with regard to the Secretary because the Secretary possessed actual knowledge of Davidson's bankruptcy case in time to protect the Secretary's rights. The Secretary argues that the "actual knowledge" provision of § 523(a)(3)(B) refers to " 'specific knowledge of the actual breach of duty on which [the Secretary] sues' " or " 'aware[ness] that an ERISA requirement has been violated.' " Pl.'s Opp'n to Def. David R. Davidson's Motion to Dismiss at 4 (quoting *Brock v. Nellis*, 809 F.2d 753, 755 (11th Cir.), *cert. dismissed*, 483 U.S. 1057, 108 S.Ct. 33, 97 L.Ed.2d 821 (1987)). This argument, however, ignores the plain language of the statute. The case relied on by the Secretary for his definition of actual knowledge is inapposite. *Brock* involved the construction of the language of ERISA's statute of limitations provision. *Brock*, 809 F.2d at 754–55. That provision prohibits the commencement of an action for breach of fiduciary duty under ERISA three years after the date on which the plaintiff had " 'actual knowledge of the breach or violation.' " *Id.* at 754–55 & n. 2 (quoting 29 U.S.C. § 1113(a)(2)(A) (1982)). The *Brock* court concluded that the "plain meaning" of that provision required that the Secretary have specific knowledge of the breach of duty sued on or an awareness of an ERISA violation before being barred by that provision from bringing suit. *Id.* at 755. In contrast to the ERISA statute of limitations provision construed by the *Brock* court, however, Bankruptcy Code § 523(a)(3)(B) refers to actual knowledge of the bankruptcy *case*. 11 U.S.C.A. § 523(a)(3)(B) (West 1993). This reading of § 523(a)(3)(B) is supported by the caselaw.

In *Walker v. Wilde (In re Walker,)*, 927 F.2d 1138 (10th Cir.1991), the United States Court of Appeals for the Tenth Circuit held that actual knowledge of the filing of a chapter 7 bankruptcy proceeding is sufficient to preclude a creditor from relying on § 523(a)(3)(B). *Id.* at 1145. In *Walker*, the appellant creditors had filed a civil action in state court against the respondent debtor for deceptive appropriation of funds during a consumer real estate transaction. *Id.* at 1140. The creditors prosecuted the action and obtained a judgment against the debtor. Unbeknownst to the state court and the creditors, however, the debtor had filed a petition for relief under chapter 7 of the Bankruptcy Code five days prior to the formal entry of judgment.[7] *Id.*

The creditors first learned of the bankruptcy filing approximately three months after the fact when their attorney was notified by another creditor of the name and address of the bankruptcy court in which the debtor had filed, the case number, and the name and address of the debtor's chapter 7 trustee. *Id.* The creditors' attorney called the bankruptcy court to verify the information, but was told to submit a written inquiry. *Id.* The attorney submitted the inquiry, but did not receive a response from the court until after the bar date. *Id.* Neither the creditors nor their attorney took any other action to protect the creditors' rights in the bankruptcy court, and the court ultimately issued the debtor a chapter 7 discharge. *Id.*

Subsequent to the discharge, the creditors petitioned the bankruptcy court for an extension of time in which to challenge the dischargeability of their claim. *Id.* at 1141. The bankruptcy court denied the motion and the creditors appealed to the district court. *Id.* The district court affirmed and the creditors appealed to the Tenth Circuit, which affirmed the district court on this issue. *Id.*

Focusing on the language of Bankruptcy Code § 523(a)(3)(B), the Tenth Circuit noted

suit filed by Secretary of Labor because Secretary of Labor represents the "public interest" while private plaintiff represented only the interests of himself and members of his class); *Donovan v. Robbins*, 99 F.R.D. 593, 597 (D.Ill. 1983) (suggestion that Secretary of Labor had only derivative standing to challenge violations of ERISA appeared implausible since statutory authority for Secretary's cause of action con-

tained no such facial limitation on Secretary's right to relief).

7. The state court judgment was later vacated by the Utah Supreme Court on the grounds that it was entered after the debtor filed his chapter 7 petition. *Walker v. Wilde (In re Walker)*, 927 F.2d 1138, 1141 (10th Cir.1991).

that the appellant creditors had received actual notice of the bankruptcy filing approximately six weeks prior to the deadline for filing complaints against discharge. *Id.* at 1145. Based on the statute's language and the creditors' knowledge of the filing, the court held that "the [creditors'] actual knowledge of [the debtor's] chapter 7 bankruptcy case, in ample time for them to prepare and timely file the necessary request for determination of dischargeability, bars them from challenging the dischargeability of their claim some fifteen months after the bar date for such complaints." [8] *Id.* The court noted that "[s]ection 523(a)(3)(B) 'explicitly places a burden on creditors with knowledge of bankruptcy proceedings to act to protect their rights.'" *Id.* (quoting *Sanchez Ramos v. Compton (In re Compton)*, 891 F.2d 1180, 1187 (5th Cir.1990)).

In the case at hand, the Secretary had actual knowledge of Davidson's bankruptcy filing before the deadline for filing complaints objecting to discharge. On July 1, 1988, John Olcese, an investigator with the Seattle District Office of the Pension and Welfare Benefits Administration, United States Department of Labor, received a letter from a person familiar with the Plan's activities. Declaration of John Olcese at 1–2. The letter contained information on Plan transactions and various relevant documents. *Id.* at 2. Included among the documents were copies of Davidson's chapter 11 filings. *Id.* On August 5, 1988, Investigator Olcese was notified that the chapter 11 case had been converted into a chapter 7 case. *Id.*

■ The question, therefore, is whether the Secretary's knowledge of Davidson's bankruptcy proceedings was obtained in time to file a timely § 523(c) complaint under Rule 4007. September 21, 1988 was the deadline for filing requests for a determination of dischargeability in the Davidson bankruptcy proceeding. The Secretary, through Investigator Olcese, first learned of Davidson's chapter 11 filing on

July 1, 1988, and of the conversion of the case to a chapter 7 case on August 5, 1988.

The Secretary argues, however, that at the time Investigator Olcese first learned of Davidson's bankruptcy proceeding, the investigation was only in its initial stages and, therefore, the Secretary was not yet in a position to prosecute a complaint requesting a determination of nondischargeability. Pl.'s Opp'n to Def. David R. Davidson's Mot. to Dismiss at 4–5. The Secretary notes that investigator Olcese did not submit his report to his superiors in the Seattle District Office of the Pension and Welfare Benefits Administration until February 9, 1990, almost seventeen months after the deadline for filing § 523(c) complaints in the bankruptcy court. *Id.* at 4.

The United States District Court for the District of Massachusetts rejected a similar argument made by the Secretary in *Dole v. Grant (In re Summit Corp.)*, 109 B.R. 534 (D.Mass.1990). In *Summit*, the Secretary brought a civil action against one individual defendant and two corporate defendants for breach of their fiduciary duties under ERISA. *Id.* at 535. Although the court did not specifically elaborate on this point, it is clear that the defendants had previously filed for relief under the Bankruptcy Code because immediately after filing the ERISA complaint, the Secretary notified the bankruptcy court of the ERISA action and of the Secretary's position that the ERISA action was exempt from the automatic stay. *Id.* Soon thereafter, the Secretary filed with the bankruptcy court a contingent, unliquidated proof of claim based on the ERISA complaint.

The bankruptcy court established a deadline of August 31, 1987 for the filing of adversary complaints by the creditors. *Id.* at 536. Approximately nine months after the deadline expired, the bankruptcy trustee filed adversary complaints against the trustees of a number of the pension plans named in the Secretary's ERISA complaint, seeking to avoid fraudulent conveyances or preference payments allegedly made by the

---

**8.** The Tenth Circuit refused to overturn the bankruptcy court's conclusion that six weeks provided adequate time for the creditors to prepare and file their complaint based on the creditors' failure to show that such a conclusion was clearly erroneous. *Id.* at 1145.

debtors. *Id.* Three months subsequent to the bankruptcy trustee's actions, the Secretary filed an adversary complaint to determine the dischargeability of a contingent debt owed the Secretary by the defendants as a result of the fraud and preference payments alleged in the bankruptcy trustee's adversary complaints.[9] *Id.*

One of the defendants moved the *Summit* court to dismiss the adversary complaint as time-barred. *Id.* In opposing the motion, the Secretary sought the application of § 523(a)(3)(B), arguing that she did not have knowledge of the contingent debt that was the subject of her adversary complaint until the bankruptcy trustee filed its adversary complaints against the trustees of various pension plans almost nine months after the expiration of the bankruptcy court's deadline for adversary complaints filed by creditors. *Id.* at 536–37.

The *Summit* court rejected the Secretary's argument because the Secretary had actual knowledge of the bankruptcy case prior to the deadline. *Id.* at 537. The court held that it was unnecessary for purposes of applying § 523(a)(3)(B) to inquire into when the Secretary first learned of the specific debt sued on. *Id.* The court explained that Rule 4007(c) is to be strictly interpreted and applied. *Id.* Because Rule 4007(c) is designed to further the fresh start policy of the Bankruptcy Code, and because § 523(a)(3)(B) provides the only exception to the time limitation and conditions of Rule 4007(c), the court was unwilling to except the Secretary from Rule 4007(c)'s time constraints based on the Secretary's lack of knowledge of the debt sued on. *Id.* at 537–38. Referring to § 523(a)(3)(B)'s actual knowledge limitation, the court stated that "[s]imilar to the court in *In re Braun,* this 'court has not found any case which somehow explains away this proviso to § 523(a)(3)(B) to permit a creditor, who has timely notice or knowledge of the case but is unaware of the basis for a potential § 523(a)(4) complaint until after the Bankr.

Rule 4007(c) statute of limitations has run, to file such a complaint under § 523(a)(3)(B).'" *Id.* at 538 (quoting *In re Braun,* 84 B.R. 192, 194 (Bankr.D.Or. 1986)).

Moreover, the Secretary makes no showing that he did not have sufficient time to file a § 523(c) complaint by the September 21, 1988 deadline. The Secretary states only that Investigator Olcese did not submit his report to his superiors until almost seventeen months after the bar date. Pl.'s Opp'n to Def. David R. Davidson's Mot. Dismiss at 4. As noted above, however, the Secretary is charged with Investigator Olcese's knowledge of the bankruptcy proceeding when that knowledge was obtained by Investigator Olcese. Therefore, the time the report was finally submitted is irrelevant except to the extent that it might be construed to speak to the amount of time necessary to file a § 523(c) complaint. Other than the preceding statement about the submission date of the report, the Secretary does not address this point. It is undisputed, however, that Investigator Olcese first learned of Davidson's chapter 11 filing on July 1, 1988, eleven weeks prior to the deadline. Declaration of John Olcese at 2. On that date, Investigator Olcese not only learned of Davidson's bankruptcy filing, he "received a letter from a person familiar with the Plan's activities with information on Plan transactions." *Id.* The Secretary has not made a showing that this information was insufficient to allow him to file a § 523(c) complaint, or that the following eleven weeks was an insufficient time for him to conduct a sufficient factual inquiry to allow him to file a complaint.[10] The Secretary's burden of showing that eleven weeks of investigation was insufficient to provide him with the knowledge necessary to file a complaint is highlighted by the fact that Bankruptcy Rule 4007(c) itself requires a bankruptcy court to provide a creditor with only thirty days' notice of the deadline. Bankr.R. 4007(c); *Cf.*

---

9. It is unclear from the opinion whether the adversary complaint was filed in the bankruptcy court or in the district court.

10. The Secretary need not have completed all discovery before filing a § 523(c) complaint, but needed only to conduct a "reasonable inquiry" to assure himself that the complaint was "well grounded in fact...." Fed.R.Civ.P. 11.

*Manufacturer's Hanover v. Dewalt (In re Dewalt)*, 961 F.2d 848, 850 (9th Cir.1992) (except in extreme cases, such as unsophisticated creditor unrepresented by counsel, who received only the most sketchy notice of the filing, thirty days notice of the bankruptcy proceeding provides sufficient time to file § 523(c) complaint).[11]

## B. Setoff

The Secretary opposes Davidson's Motion to Dismiss by asserting a right to offset Davidson's beneficial interests in the Plan against any judgment he might obtain on the Plan's behalf against Davidson in a trial on the merits. Pl.'s Opp'n to Def. David R. Davidson's Mot. Dismiss at 7–9. The Secretary argues that setoff is an appropriate remedy under ERISA and is necessary in the instant case to avoid undermining the purposes of ERISA. *Id.* The court agrees with the Secretary on this point and, accordingly, denies Davidson's Motion to Dismiss.

■ Davidson's discharge in the bankruptcy proceeding does not bar the Secretary from asserting a right to setoff. A discharged debt may be set off upon compliance with the terms and conditions provided in § 553 of the Bankruptcy Code, notwithstanding Bankruptcy Code § 524(a)'s post-discharge bar. *Davidovich v. Welton (In re Davidovich)*, 901 F.2d 1533, 1539 (10th Cir.1990); *see also Carolco Television, Inc. v. National Broadcasting Co. (In re DeLaurentiis Entertainment Group, Inc.)* 963 F.2d 1269, 1276–77 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 330, 121 L.Ed.2d 249 (1992); *Camelback Hosp., Inc. v. Buckenmaier (In re Buckenmaier)*, 127 B.R. 233, 237 (9th Cir. BAP 1991).

*Davidovich* reconciled the apparent inconsistency between the language of Bankruptcy Code §§ 524(a) and 553(a). On the one hand, § 524(a) provides: "A discharge in a case under this title ... operates as an injunction against the commencement or continuation of any action, the employment of process, or an act to collect, recover or *offset* any such debt as a personal liability of the debtor...." 11 U.S.C.A. § 524(a) (West 1993) (emphasis added). On the other hand, however, § 553(a) provides: "Except as otherwise provided in this section and section 362 and 363 of this title, *this title does not affect any right of a creditor to offset ...*" *Id.* § 553(a) (emphasis added). The *Davidovich* court gave precedence to § 553(a)'s language that "this title does not affect any right of a creditor to offset ..." and concluded that the right to offset a mutual, prepetition debt survives even the discharge of the debtor, because it would " 'be unfair to deny a creditor the right to recover an established obligation while requiring the creditor to fully satisfy a debt to a debtor.' " *Davidovich*, 901 F.2d at 1539 (quoting *Turner v. United States (In re G.S. Omni Corp.,* ) 835 F.2d 1317, 1318 (10th Cir.1987)). Therefore, the court

---

**11.** The court also notes that it would have been a simple matter for the Secretary to request an extension of the deadline for filing a § 523(c) complaint if additional time was necessary to complete the investigation. Such a request would have alerted the bankruptcy court, which the Secretary knew was in the process of administering Davidson's estate, that a party in interest may have a valid objection to the dischargeability of some of the debtor's debts. Such an action *is* advisable in cases like the one at hand, where a creditor knows long in advance of the deadline that the debtor has filed for relief under the Bankruptcy Code, and, at the same time, possesses sufficient suspicions about the propriety of the debtor's debts to launch an investigation. Under such circumstances, no policy is advanced by allowing the creditor to stand mute, permit the bankruptcy court to administer the estate, and then attack the bankruptcy court's discharge of the debts. However, because the court holds the Secretary has failed to make a sufficient showing that it did not have adequate time to file a § 523(c) complaint, it need not decide whether a creditor's knowledge of the bankruptcy proceeding in time to request an extension, but not in time to file a complaint precludes the creditor from later objecting to the dischargeability of the debts. *Compare (In re Dewalt)*, 961 F.2d at 850 ("conscientious" creditor not precluded from objecting to discharge after deadline where creditor arguably knew of the bankruptcy case in time to request extension, but not in time to file § 523(c) complaint; generally, creditor should have 30 days to review merits of claim) *with In re Piesner*, 130 B.R. 399, 402 (Bankr.E.D.N.Y.1991) (creditor precluded from filing late § 523(c) complaint because, whether or not creditor knew of bankruptcy proceeding in time to file complaint, creditor knew of proceeding in time to request extension of deadline).

held, "a discharged debt may be set-off upon compliance with the terms and conditions stated in section 553 of the Code." *Id.*

■ Section 553 of the Bankruptcy Code, which recognizes the common law doctrine of setoff, allows a creditor "to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case...." 11 U.S.C.A. § 553 (West 1979); *see Davidovich,* 901 F.2d at 1537. Thus, § 553 incorporates both a mutuality requirement and a timing requirement. *Id.* The mutual prepetition debts need not, however, have arisen out of the same transaction in order to be set off against each other under the statute. *Id.*

■ The mutuality requirement requires that the debts involved be between the same parties standing in the same capacity. *Id.* The basic test of mutuality is whether something is owed by each side. *Tradex, Inc. v. United States (In re IML Freight, Inc.,* 65 B.R. 788, 793 (Bankr.D.Utah 1986)).

■ In the instant case, mutuality is satisfied even though the Secretary, and not the Plan, is the named plaintiff because the Secretary is acting in a representative capacity with regard to the Plan. Although it may be the case that the Secretary's standing is independent from, and thus not merely derivative of, the Plan's standing, *see supra* note 6 and accompanying text, it is accurate to note that the Secretary's action in this case is representative of the Plan. The Secretary does not seek in this action to offset a debt owed by himself or the Department of Labor against the alleged debt owed by Davidson to the Plan, but merely to offset the *Plan's* debt to Davidson against Davidson's alleged debts to the Plan. Any benefits resulting from this action will accrue solely to the Plan.[12]

■ The timing requirement allows the setoff only of debts that arose prepetition. The timing requirement is interwoven, in part, with the mutuality requirement; the idea being that claims arising after the commencement of the case lack the requisite mutuality for setoff against prepetition debts because the postpetition trustee or debtor-in-possession occupies a different capacity from the prepetition debtor. *See Ashland Petroleum Co. v. Appel (In re B & L Oil Co.),* 782 F.2d 155, 158 (10th Cir. 1986). Thus, in order for mutuality to be present in a bankruptcy context, both debts must have originated prepetition. Mutuality is determined with reference to the time the underlying debt arose, not with reference to the time the petition was filed. *See Marketing Resources Int'l Corp. v. PTC Corp., (In re Marketing Resources Int'l Corp.,* 35 B.R. 353, 355 (Bankr.E.D.Pa. 1984)).[13]

The timing requirement of § 553(a) is met in the case at hand. The Plan's claim against Davidson arose at the time when the alleged breaches of fiduciary duty occurred, before Davidson filed his bankruptcy petition. Similarly, Davidson's beneficial interest in the Plan that existed as of the date of the petition is a prepetition obligation of the Plan to Davidson.[14] Set-

---

**12.** The Secretary brought this action pursuant to ERISA § 502(a)(2) and (5). Compl. at 1. Section 502(a) authorizes participants, beneficiaries, and the Secretary to bring a civil action to hold fiduciaries "personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary, which have been made through use of assets of the plan by the fiduciary...." ERISA § 502(a)(2), 29 U.S.C.A. § 1132(a)(2) (West 1985). Section 502(a)(5) permits the Secretary to seek to enjoin acts or practices that violate Title I of ERISA or to obtain appropriate equitable relief. ERISA § 502(a)(5), 29 U.S.C.A. § 1132(a)(5) (West 1985). This is not a case, for example, where the Secretary seeks to recover a civil penalty from Davidson under ERISA § 502(a)(6). ERISA § 502(a)(6), 29 U.S.C.A. § 1132(a)(6) (West Supp.1993).

**13.** This court disagrees with the reasoning in *Johnson v. Rutherford Hosp. (In re Johnson),* 13 B.R. 185, 188–89 (Bankr.M.D.Tenn.1981).

**14.** Conversely, any beneficial interest of Davidson's in the Plan that is attributable to the time period subsequent to the filing of the petition is a post-petition obligation of the Plan to Davidson and, therefore, cannot be set off against the Plan's claim against Davidson.

off is therefore appropriate under § 553(a) of the Bankruptcy Code.

■ Although Bankruptcy Code § 524(a)(2) does not bar setoff when asserted in a defensive capacity to reduce the recovery of the other party, it does bar any attempt to affirmatively recover on the discharged debts. In other words, the Secretary may not seek affirmative recovery for the Plan in excess of the amount of Davidson's beneficial interest in the Plan. *Cf. Ford v. Darracott (In re Ford)*, 35 B.R. 277, 280 (Bankr.N.D.Ga.1983) ("[D]ebts previously discharged pursuant to § 727 of the Code prohibit the creditor from engaging in collection efforts or seeking a judgment on those debts against the debtors in any post discharge action, but where suit is brought by the debtors against the creditor, pre-petition claims of the creditor may be used to defend himself in the suit.").[15]

■ The conclusion that setoff is allowable in the case at hand is not affected by ERISA's anti-alienation provision and the broad reading given that provision by the United States Supreme Court in *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990). ERISA section 206(d)(1) proscribes the assignment or alienation of pension plan benefits. 29 U.S.C.A. § 1056(d)(1) (West Supp.1993). In *Guidry*, the Court declined, despite strong equitable considerations to the contrary, to recognize an implied exception to this provision that would have permitted a labor union to impose a constructive trust on the pension benefits of a corrupt union official. *Id.* at 376, 110 S.Ct. at 687.

The petitioner in *Guidry*, a former union official of the respondent union and a trustee of one of the union's pension funds, plead guilty to embezzling funds from the union in violation of section 501(c) of the Labor Management Reporting and Disclosure Act of 1959. *Id.* at 367–68, 110 S.Ct.

at 683. The union then obtained a judgment against the petitioner for $275,000.00 and the United States District Court for the District of Colorado imposed a constructive trust on the pension benefits due the petitioner under three pension plans to which he was eligible by virtue of his union employment. *Id.* at 369–70, 110 S.Ct. at 684. The United States Court of Appeals for the Tenth Circuit affirmed, *id.*, and the United States Supreme Court granted certiorari. *Id.* at 371, 110 S.Ct. at 685.

The Supreme Court refused to create a generalized equitable exception—either for employee malfeasance or for criminal misconduct—to ERISA's anti-alienation provision. The Court explained that "[s]ection 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them." *Id.* at 376, 110 S.Ct. at 687. The court believed that "[i]f exceptions to this policy are to be made, it is for Congress to undertake this task." *Id.*

The Court noted, however, that *Guidry* did not involve a case where the defendant pensioner had been found to have breached a fiduciary duty *to the pension plans*. *Id.* at 365, 110 S.Ct. at 680. Instead, in *Guidry*, the defendant had been convicted of embezzling money only from the Union. *Id.* The Court expressly declined to reach the question whether, in a case where the defendant had been found to have breached his fiduciary duties to the pension plan, ERISA section 409(a) provided a congressionally created exception to ERISA's anti-alienation provision. *Id.* at 374–75, 110 S.Ct. at 686.

The instant case, of course, does involve a situation where the defendant pensioner is alleged to have breached his fiduciary duties to the pension plan. Therefore, the

---

**15.** Such a result may also be implied from the Tenth Circuit's reasoning in *Turner v. United States of America (In re G.S. Omni Corp.)*, 835 F.2d 1317 (1987). In *In re G.S. Omni Corp.*, the Tenth Circuit differentiated setoff from a claim requesting affirmative recovery. *Id.* at 1319.

The court held that a creditor need not file a proof of claim as a prerequisite to asserting a right to setoff where setoff is asserted as a defense to a turnover action, instead of as a grounds for affirmative relief seeking a distribution from the estate. *Id.*

issue avoided in *Guidry* is squarely before this court. For the reasons that follow, this court holds that ERISA section 409(a) provides an exception to ERISA section 206(d)(1)'s anti-alienation provision.

In the first place, a pensioner/fiduciary who breached his fiduciary duties to the pension plan will not be unfairly deprived of any anticipated retirement benefits if the pension plan is allowed to offset the pensioner's pension benefits. In such a case, the offset operates as if the pensioner/fiduciary were receiving the full amount of the benefits he would have received had the pension plan not been depleted by his wrongdoing; his beneficial interest in the plan would merely be credited against any judgment debt obtained against him by the Secretary. *Crawford v. La Boucherie Bernard LTD.*, 815 F.2d 117, 122 (D.C.Cir. 1987).

More importantly, however, the ERISA provisions at issue can best be reconciled by holding that section 409(a) provides an exception to section 206(d)(1). *Coar v. Kazimir*, 990 F.2d 1413, 1415 (3d Cir.1993); *Pension Benefits Guaranty Corp. v. Solmsen*, 743 F.Supp. 125, 129 (E.D.N.Y. 1990). *But see Herberger v. Shanbaum*, 897 F.2d 801, 804 (5th Cir.1990), *cert. denied* 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990). ERISA was enacted "to protect ... the interests of participants in employee benefit plans and their beneficiaries ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the federal courts." ERISA § 2(b), 29 U.S.C.A. § 1001(b) (West 1985). In support of this policy, ERISA section 409(a) provides that a person breaching duties to a pension plan "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach ... and shall be subject to such other equitable or remedial relief as the court may deem appropriate...." ERISA § 409(a), 29 U.S.C.A. § 1109(a) (West 1985). ERISA section 502(a) provides the enforcement mechanism, by authorizing the Secretary, plan participants, or beneficiaries to bring a civil action "for

appropriate relief under section [409]" or to obtain an injunction or "other appropriate equitable relief" for violations of ERISA's fiduciary duty provisions. ERISA § 502(a), 29 U.S.C.A. § 1132(a) (West 1985).

ERISA's anti-alienation provision, section 206(d)(1), contains no language suggesting that it was intended to supersede ERISA section 409(a). *See* ERISA § 206(d)(1), 29 U.S.C.A. § 1056(d)(1) (West Supp.1993). Furthermore, nothing in the provision's legislative history indicates such an intent. *Coar*, 990 F.2d at 1415. Instead, as indicated by the Supreme Court in *Guidry*, the provision is intended to protect the income stream of pensioners and their dependents. *Guidry*, 493 U.S. at 376, 110 S.Ct. at 687. This purpose would be frustrated, not furthered, by an interpretation that prohibited offset when the pensioner/fiduciary has breached his fiduciary duties to the pension plan. *Coar*, 990 F.2d at 1415; *Crawford*, 815 F.2d at 122.

Given the express language of ERISA section 409(a) that pension plan fiduciaries are required to "make good" to the plan any losses caused by the breaches of their fiduciary duties to the plan, and the lack of any indication in the language of ERISA section 206(d)(1) or its legislative history that section 206(d)(1) was intended to limit section 409, this court holds section 409(a) provides an exception to section 206(d)(1). To hold otherwise would be merely to favor the pension stream of a faithless fiduciary over the pension stream of the innocent participants and beneficiaries.

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that:

(1) Davidson's motion for summary judgment, as converted from his Motion to Dismiss, is denied as provided in this Memorandum Decision and Order;

(2) this order shall suffice as the Court's ruling on this motion and no further order need be prepared by counsel.